[Crim. No. 13499. Second Dist., Div. Three. Apr. 30, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. DAVID DWIGHT SMYERS, Defendant and Appellant.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

Francis Sarguis, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Elizabeth Miller and Barry H. Lawrence, Deputy Attorneys General, for Plaintiff and Respondent.

COBEY, J.—This is an appeal following a jury trial from a judgment of conviction of the felonies of burglary of the first degree, forcible rape and robbery of the first degree (2 counts).

The sole issue is whether appellant, who desired private counsel, was denied his constitutional right to counsel and to due process of law by his being forced to trial and judgment without counsel because of his failure prior to trial to attempt in good faith to obtain such counsel. Since appellant continuously maintained prior to and at the start of the trial that he had ample funds to employ private counsel,[1] and that he did not want representation by the public defender, there is no question here respecting appellant's right to representation by the public defender at the trial.[2] Likewise appellant never asserted at any time that he wished to represent himself either at the trial or at his arraignment for judgment.[3] Consequently there is no question in this case regarding his constitutional right to insist upon self-representation either at the trial or at the arraignment for judgment. Stated otherwise, there is no question here of voluntary waiver by appellant of his constitutional right to counsel either at the trial or at his arraignment for judgment.

On August 30, 1966, appellant was arrested. He was thereafter confined in the county jail. On September 22, he made his first appearance in the superior court.[4] He was accompanied by local private counsel, Thomas G. Neusom of Los Angeles. Upon Motion of his counsel, appellant's arraignment for plea upon the three informations filed against him was continued two weeks. On October 6, appellant made his second

[1]This may seem paradoxical in view of appellant's inability to raise money for bail, but appellant refused to disclose his financial condition to the trial court when pressed on the point on October 27, 1966, over two weeks before the start of the trial and continued to insist that he had funds with which he could employ a private attorney.

[2]Furthermore in this case the public defender was disqualified from representing appellant at the trial because of a conflict of interest between appellant and his codefendant, Cornish, who had been represented by the public defender since September 22, 1966. Just prior to the start of appellant's trial on November 14, 1966, Cornish pleaded guilty to a lesser included offense and at the trial testified for the People.

[3]On October 27, 1966, over two weeks before the start of the trial, appellant repeatedly told the trial court he was not going to represent himself and did not want to do so.

[4]Pursuant to California Rules of Court 12(a) and 30, we have, on our own motion, augmented the record on appeal by the addition of a transcript of the pretrial proceedings of September 22, and October 6, 13, 17 and 27, 1966. Copies of this transcript have been served on present counsel of record on this appeal.

appearance in the trial court. Again he was accompanied by private counsel. This time his counsel was Benni H. Freund of Los Angeles, who appeared for his counsel of record, the aforementioned Thomas Neusom. Freund explained that one of the purposes of the previous continuance had been to permit appellant to make proper arrangements for retaining Neusom and that this had not been done. Consequently Neusom, through Freund, moved to withdraw as appellant's counsel upon the foregoing ground and also because of a conflict between Neusom and appellant. The motion was denied and the matter was continued one week so that Neusom could present the motion personally.

On October 13, appellant made his third appearance in the trial court. At the outset of this appearance, Freund moved that he be substituted as appellant's counsel in place of Neusom. The trial court inquired of appellant whether this was his desire. Appellant replied that instead he would like to telephone Detroit from whence he had come. The bailiff thereupon informed the court that at each of his two preceding court appearances appellant had telephoned Detroit and that in the course of these two calls appellant had talked to his brother and his wife. The court then denied appellant's request to make a third telephone call to Detroit, granted the renewed motion by Freund that Neusom be relieved as appellant's counsel, and gave appellant and Freund some time to consult together. Following this conference, a dispute developed in open court between Freund and appellant as to how to proceed and at Freund's request he was then relieved as appellant's counsel.

The court then inquired of appellant whether he wished representation by the public defender, but the deputy public defender at once informed the court that such joint representation of appellant and his codefendant, Cornish, was impossible because of a conflict. The court thereupon offered to appoint a Pasadena attorney, John H. Whyte, to represent appellant but appellant objected on the basis that he already had a Michigan attorney and would know in a week or two whether that attorney would be able to get to California. The court then continued the cases on motion of appellant for one final continuance stating, "I am going to give you one more two week continuance and this is the last one. This is the last one; do you understand that?" Appellant said, "Thank you." The cases were continued to October 27. Apparently in appellant's presence, the court also set the trial of ap-

pellant's previously mentioned codefendant, Cornish, for November 14.

Appellant appeared for the fourth time in the trial court on October 17. This time he was without counsel. The court first inquired whether appellant had a firm arrangement with his Detroit counsel whom appellant identified on request as "Talco." Appellant admitted that he did not have such an arrangement with Talco. The court suggested to appellant that in view of one of the three cases, that involving Cornish, having already been set for trial on November 14, appellant permit him to appoint the previously mentioned Whyte as appellant's private counsel on the understanding that if Talco came out from Detroit, he could either associate Whyte with him in his representation of appellant or the court would then consider releasing Whyte. The court then recessed the matter for a few minutes in order that Whyte might be summoned to confer with appellant. The conference apparently occurred and appellant then announced in open court that he did not want to be represented by Whyte but did desire to be represented by either Talco or by California counsel of his own choosing. The matter was then again continued, as before, to October 27.

On October 27, appellant appeared in the trial court for the fifth time. Five weeks had now elapsed since his first appearance and three continuances of his arraignment for plea in the three cases had been granted. Nevertheless, Smyers immediately announced that he was not ready to plead. He admitted on inquiry that his Detroit counsel, Talco, was not going to appear. The court, evidently forgetting the public defender's claim of disqualification, then told appellant that under the circumstances he was going to have to represent himself or let the court appoint the public defender to represent him. Appellant replied that he was not going to represent himself and that he did not want the public defender. The court told him he had no other choice. Appellant answered that he was going to try to secure an attorney as he had funds for one. The court then expressed his skepticism in regard to such financial ability on the part of appellant in view of his admitted inability to raise bail and twice offered appellant the services of the public defender. Appellant refused both offers. The court then said the case would be set down for trial and appellant would have to represent himself. The court then entered pleas of not guilty for appellant to all counts as authorized by Penal Code, section 1024. At this point the

court again asked appellant whether he wished to represent himself. Appellant replied that he did not. The court assured him he had no choice, and then attempted to inquire into appellant's financial condition. Appellant refused to disclose his finances and insisted he had money. He protested that being in the county jail and only being able to write letters had made it difficult for him to secure an attorney. The court then reminded appellant of the history of his representation in the cases and of the fact that appellant had rejected the court's proffered appointment of a local private attorney, John Whyte. The court again told appellant that he would have to try the case himself unless he took the services of the public defender and then set the case for trial on November 14.[5] Appellant then requested permission to make another telephone call to Detroit. This was denied. The court then told appellant that he was going to trial on November 14 and that he was going to represent himself at the trial. The court, once again, offered appellant the services of the public defender. Once again the appellant rejected this and said that within the length of time allowed him he would try to secure an attorney. The court again reminded appellant that he would either have to take an attorney at that time or try the case himself on November 14, 1966. Appellant stated he understood his situation.

On November 14 the three cases were called for trial in the master calendar department. Codefendant Cornish was at this time permitted to withdraw his plea of not guilty in the case in which he was codefendant and to enter a new plea of guilty to a lesser included offense. At this point the People's motion that all three cases against appellant be consolidated for trial was granted and the three consolidated cases were then transferred to a trial department for trial. In the trial department the People's motions that the four counts of the three cases be consolidated under a single specified case number,[6] and that

---

[5]The court made the point crystal clear to appellant. He stated, ''I am going to set it down for trial and you are going to have to be ready for trial. You are going to defend yourself unless you take the services of the Public Defender. Now is that clear?'' Appellant replied, ''Yes, that is very clear.''

[6]Appellant's private counsel on appeal has argued orally that the consolidation of the three cases on the day of trial constitutionally necessitated a continuance in the start of the trial. We disagree. The three cases having been set on October 27 for trial on the same day, November 14, their consolidation for trial on that day should not have surprised appellant and did not *per se* require a continuance.

all allegations of a prior felony .conviction be stricken, were granted.

.The following colloquy then occurred at about. 12. noon between the court (a different judge from Judge Noble who had presided over all the pretrial proceedings except those of September 22, 1966), the appellant, the deputy district attorney, Mr. Girot, and others: "THE COURT: Both sides ready? Are you ready for trial, Mr. Smyers? MR. SMYERS: Your Honor, I can not recognize this as a trial due to the fact that I stated to Judge Noble that I didn't have ample time to prepare a defense for myself, and so, therefore, I can not recognize it as a trial. I have not made a plea of guilty or not guilty. THE COURT: Well, you were in court, Mr. Smyers, according to the record, on September the 22nd, so it appears that you have had ample time to prepare for trial. What could you expect by delaying the matter of trial? MR. SMYERS: Well, I could expect to have ample defense for myself. Regardless of the length of time it would take for me to have the defense, I'm going to have the best. And I have been approached by one public defender, and he approached me about pleading guilty. And the attorney I· had I, I dismissed him myself because he wasn't sufficient, as far as I was concerned. And I haven't had time to contact the type of attorney that I wish to have to defend me. THE COURT: Well, I feel, Mr. Smyers, you have had ample time to do all of those things. The Court furnished you with the public defender, offered to, and you refused to take him. In the trial of this case, Mr. Smyers, the Court wishes to advise you that when the jury is in panel, you have a right to cross examine each individual juror for cause. If for any reason any prospective juror appears to have some prejudice of one-kind or another that would prevent you from having a free and impartial trial, you have a right to inquire into the juror's attitude and frame of mind in that regard. Likewise, the Court wishes to advise you that you have. a right to exercise ten peremptory challenges, whereby you can excuse up to ten jurors without stating any reason for their being excused at all. Do you understand that? MR. SMYERS: Definitely—Your Honor, not being belligerent, but I stated before that I couldn't recognize this as a trial due to the fact I wouldn't defend my own self, in the first place, so, therefore, I am not going to question any juror or. anyone else. THE COURT: Do you want to· take a public defender? MR. J. STANLEY BRILL (Deputy Public Defender): If your Honor pleases, in this matter there is a conflict be-

tween this defendant and the co-defendant, who has now entered a plea of guilty. We couldn't possibly represent this man fairly and adequately, because we did represent Mr. Cornish, and still do. THE COURT: According to the record here, Mr. Smyers, you had private counsel, and, apparently discharged him because he made a motion to withdraw, which was granted. MR. SMYERS: Made a motion to withdraw after I fired him. THE COURT: Well, you fired him and so then he made a motion to withdraw, and that was over a month ago: So you have had ample time to get additional counsel. MR. SMYERS: Well, due to the fact that I have been incarcerated since September the 1st, and only way I can contact an attorney is through writing, and the situation by being in the County Jail is not very good, and every attorney just doesn't want to come down when he receives a letter to interview me. And if I had ample time to get an attorney, I would get one and I would defend myself properly. THE COURT: Do you have funds with which to employ counsel? MR. SMYERS: Definitely I do. THE COURT: Do you have funds to employ counsel of your own choice? MR. SMYERS: That is correct. THE COURT: Are you familiar with this? MR. GIROT: I am familiar with the last counsel Mr. Smyers had. At that time he was informed by the Court to contact his counsel and be ready to go to trial at this particular date. THE COURT: What date was that? MR. GIROT: I believe that was two or three weeks ago. I believe it was October 27, 1966, to the best of my knowledge. Yes, I am informed by the officer. He believes also it was October 27, and that is what I have marked on my file, it was October 27. At that time I believe the defendant did make a representation that he would have counsel. I don't know whether he has inquired as to getting counsel since that particular date. There is no information in Department "A" with reference to that. THE COURT: Well, it appears to the Court, Mr. Smyers, that you are using this matter merely for the purpose of delay. MR. SMYERS: I am not using— THE COURT: And I don't think you are in good faith attempting to get counsel. MR. SMYERS: I am not using it for the purpose of delay. I am not a resident of California. I have only been here three weeks before I was arrested. I am not familiar with the attorneys out here, or really, the law proceedings. And the time that I have allotted myself to try to contact attorneys, I did the best I could. And the information I could get, the source I have, being in the county jail, is not very good. THE

698

Court: Well, they furnished you with a directory of attorneys, didn't they, in the jail? Mr. Smyers: No, they didn't. The Court: Did you request that? Mr. Smyers: Pardon? The Court: Did you request it? Mr. Smyers: Yes, I did. The Court: Of whom did you request that? Mr. Smyers: I sent a letter to the chaplain; and, besides that, I had a person that is a resident of Pasadena to make a call back to the county jail, to the chaplain, so that he could try to assist me in getting an attorney. And it was to no avail. That is on record in the chaplain's office. Mr. Girot: I also understand that the defendant's sister is here in court today. I don't know if she lives in the area or not. I believe at one time the defendant made a representation that he had an attorney in Chicago. Mr. Smyers: No; it was Detroit. Mr. Girot: Detroit, excuse me. The Court: Your sister lives here in Pasadena, doesn't she, Mr. Smyers? The Defendant: That is correct. The Bailiff: I understand his sister is sitting in the third row at the end with the gray hair. The Court: Is the sister of Mr. Smyers in the courtroom? A Voice: Yes, I am. The Court: And have you contacted your brother or has your brother contacted you here in reference to the case? A Voice: Yes, he has. I visited him regularly in the county jail. I called the chaplain. I wasn't able to contact him, personally, because there was an attorney I wanted my brother to get through to, and it was just to no avail. The Court: How long have you lived in Pasadena? A Voice: I have lived here for seven years. The Court: Well, you know of the existence of an attorney directory dont' you? A Voice: I know nothing about it. I have had no contact with the law until now. The Court: What was the name of the lawyer that you wanted this defendant to contact? A Voice: Pardon? The Court: What was the name of the lawyer that you gave the chaplain for your brother to contact? A Voice: I didn't give him a name. I just told him to let my brother get through to a lawyer of his choice. If I had known his name I would have called him personally. Mr. Girot: Your Honor, might I suggest that, since we are having some difficulties getting an attorney, or getting some contact with an attorney, that possibly the defendant could at this time look at a list of attorneys and today make calls to those attorneys at the expense of the County, assuming that they are here in Los Angeles County some place, and then continue this over until tomorrow morning so that we can definitely find out whether or not he has an attorney, and this maybe should be a day-to-day situation

so that it would eventually go to trial maybe within a week or so. THE COURT: Well, the Court will furnish you with a list of lawyers, Mr. Smyers, with their names and phone numbers and we will allow you to make calls and contact them. Well, we will take a few minutes recess. This matter will be continued to 1:45. Do you have any witnesses here? MR. GIROT: Yes, I do. THE COURT: All witnesses now present please return at 1:45 without further notice.''

At 1:45 p.m. the following occurred: ''THE COURT: The record will show the defendant is present in court. Mr. Smyers, the Court talked with the calendar judge during the noon recess, and he advised me that in his department that you made three long distance telephone calls to your brother, and that your sister here in town has had ample opportunity to contact a lawyer on your behalf. So there isn't any reason at all why this case shouldn't go to trial. So your motion for continuance will be denied, and we will proceed to trial.'' The trial then began. On request of the prosecutor all witnesses were excluded from the courtroom except the one testifying and an investigating officer. During the afternoon and the following morning, 10 witnesses were called to testify for the People and 14 exhibits were introduced. At the conclusion of each witness's direct examination the court offered appellant the opportunity to cross-examine. Appellant made no response to these offers. Furthermore appellant did not respond to the court's advice that he had the right to make an opening statement if he desired and further, to produce any evidence or call any witnesses on his behalf if he wished to do so. Similarly, appellant made no response to the court's advice to him that he had a right to argue his position in the case if he wished. In fact, aside from his presence in the courtroom, which was compelled, the appellant did not participate at all in the trial which resulted in his conviction. He was also unrepresented by counsel at his arraignment for judgment, held on December 22, after a delay granted on appellant's own motion.

Both the United States Constitution and the California Constitution provide that in criminal prosecutions the accused shall have the right to the assistance of counsel for his defense. (U.S. Const. Amend. VI; Cal. Const., art. I, § 13.) Both Constitutions also prevent the State of California from depriving a person of his liberty without due process of law. (U.S. Const., Amend. XIV, § 1; Cal. Const., art. I, § 13.)

But these Constitutions do not say that a fair trial and arraignment for judgment may not, under appropriate circumstances, be held without the presence of counsel for the accused. (See *People* v. *Crovedi,* 65 Cal.2d 199, 206-207 [53 Cal.Rptr. 284, 417 P.2d 868].)

This difference between the right of the accused to have counsel present and making the presence of such counsel indispensable to a fair trial is decisive in our view of this case. Here appellant lacked counsel throughout his trial, but prior to trial he was accorded a reasonable opportunity to obtain private counsel, the very type of representation he wanted. It is true that he was in jail from the time of his arrest until the start of his trial, but the record shows that although in jail he did have on his first two appearances in court two different private attorneys to represent him, thus displaying an ability to obtain private counsel; that he thereafter discharged both counsel and that his last private counsel was relieved over a month before the trial began. He thereafter twice rejected the court's offer to appoint competent local counsel to represent him. Appellant did not have private counsel at the start of his trial because he failed to make a good faith effort to obtain private counsel during the month before the trial in the apparent hope and expectation that by so doing he could delay indefinitely the start of his trial and thwart justice.[7]

We cannot tolerate such bad faith and we are not constitutionally required to do so. (See *People* v. *Thomas,* 58 Cal.2d 121, 131 [23 Cal.Rptr. 161, 373 P.2d 97], cert. den., 371 U.S. 231 [9 L.Ed.2d 495, 83 S.Ct. 327]; *People* v. *Adamson,* 34 Cal.2d 320, 332-333 [210 P.2d 13]; *People* v. *Nunn,* 223 Cal. App.2d 658, 661-663 [35 Cal.Rptr. 884], cert. den., 379 U.S. 916 [13 L.Ed.2d 187, 85 S.Ct. 267]; *People* v. *Duncan,* 175 Cal.App.2d 372, 377-381 [346 P.2d 521]; *People* v. *Gaynor,* 223 Cal.App.2d 575, 581-582 [36 Cal.Rptr. 219]; *People* v. *Rogers,* 150 Cal.App.2d 403, 416 [309 P.2d 949].) Furthermore we do not believe that under the circumstances of this case the trial court was constitutionally compelled to grant to appellant a continuance in the start of the trial beyond the

[7]That such was appellant's purpose is suggested by the three continuances and the five-week delay he obtained in his arraignment for plea and in his refusal, when finally arraigned, to plead personally to the three informations filed against him. This also was the conclusion of the trial judge who presided at the pretrial proceedings of October 6, 13, 17 and 27, 1966.

noon recess for the purpose of providing him with one last opportunity to obtain private counsel.[8]

 Penal Code, section 1050, provides in relevant part that ''No continuance of a criminal trial shall be granted except upon affirmative proof in open court, upon reasonable notice, that the ends of justice require a continuance.'' The determination whether a continuance should be granted under this statute normally rests within the discretion of the trial court. (*Jennings* v. *Superior Court*, 66 Cal.2d 867, 875 [59 Cal.Rptr. 440, 428 P.2d 304]; *People* v. *Douglas*, 61 Cal.2d 430, 435 [38 Cal.Rptr. 884, 392 P.2d 964].) In this case appellant was not seeking a continuance in the start of the trial so that he might have a reasonable opportunity to prepare his defense, as was the situation in *People* v. *Maddox*, 67 Cal.2d 647, 651-652 [63 Cal.Rptr. 371, 433 P.2d 163], and in *People* v. *Moss*, 253 Cal.App.2d 248, 251 [61 Cal.Rptr. 107]. Instead he was in bad faith seeking to delay further the start of his trial. Likewise, at no time did appellant attempt a voluntary waiver of his constitutional right to counsel as was the case in *People* v. *Carter*, 66 Cal.2d 666, 672 [58 Cal.Rptr. 614, 427 P.2d 214]. Although an accused is constitutionally entitled to represent himself at his trial in whatever manner he deems best, he may not exercise this constitutonal right of representation in such a way as to disrupt unreasonably the orderly processes of justice. (See *People* v. *Crovedi, supra,* 65 Cal.2d 199, 208.)

---

[8]If the noon recess continuance stood alone in this case, we would consider the failure to grant a longer continuance an abuse of discretion. A noon recess is not the most appropriate time nor necessarily a long enough interval within which to search for local private counsel. But in this case, appellant had already had a month in which to make a good faith attempt to secure private counsel. The augmented record indicates that he used this time and the facilities of the court to make two long distance telephone calls to his brother and his wife and while he had a sister in town and ample opportunity to contact a lawyer, he failed to do so. The record is silent as to any use by him at all of the list of lawyers' names and telephone numbers which the trial court apparently provided him just prior to the hour and a half noon recess.

If appellant had used the noon recess in a diligent but unsuccessful effort to obtain private counsel, or if he had obtained private counsel and that counsel had sought a continuance to prepare for trial, a different situation would have been presented. We note in passing that this court now probably knows more, by reason of the specially augmented record, of what happened with respect to appellant's representation prior to the trial than the trial court did when it forced appellant to trial without counsel. But we believe that the trial court knew enough, from the files of the cases and the conversation with Judge Noble during the noon recess of what had gone on prior to trial in this respect to justify the action it took in requiring appellant to stand trial without representation.

■ Neither constitutional due process nor statutory law required that the trial court, under the circumstances of this case, grant appellant a continuance in the start of the trial to obtain private counsel. (See *Ungar* v. *Sarafite*, 376 U.S. 575, 589 [11 L.Ed.2d 921, 931, 84 S.Ct. 841]; *People* v. *Crovedi*, *supra*, 65 Cal.2d 199, 206-208.)

This disposes of the question whether under the circumstances of this case appellant was deprived of his constitutional right to the presence of private counsel at his trial. In passing from it we note that neither our examination of the record nor that of counsel for appellant (both court-appointed counsel and subsequently his own private counsel), have uncovered any error in the conduct of the trial which appears to have been fairly conducted in all respects. Furthermore, the proof of appellant's guilt of the felonies charged against him was overwhelming.

■ There remains, however, the question whether appellant was entitled to the assistance of counsel at the time of his arraignment for judgment. His constitutional right to counsel applied at that stage of the criminal proceedings (see *In re Levi*, 39 Cal.2d 41, 46 [244 P.2d 403]) and unlike the situation in *In re Fresquez*, 67 Cal.2d 626, 634 [63 Cal.Rptr. 271, 432 P.2d 959], at no time prior to such arraignment for judgment did he voluntarily waive this right. Under these circumstances we believe the judgment should be reversed solely for the purpose of rearraigning appellant for judgment under circumstances which will accord to him at that time his constitutional right to counsel.

The judgment is reversed for the purpose only of rearraigning appellant for judgment under circumstances which will accord to him his constitutional right to counsel at that time.

Ford, P. J., and Moss, J., concurred.