[Crim. No. 2942. Fourth Dist., Div. One. Feb. 17, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. THOMAS EDWARD McGOWAN et al., Defendants and Appellants.

Conrad G. Walker and Howard J. Bechefsky, under appointments by the Court of Appeal, and Stanley L. Avery for Defendants and Appellants.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Megan A. Wagner, Deputy Attorney General, for Plaintiff and Respondent.

BROWN (Gerald), P. J.—Thomas Edward McGowan, Willie Dandy, Jr., and Morgan Martin appeal from judgments convicting each of second degree burglary (Pen. Code, § 459) after jury trial.

About 2 p.m., February 23, 1967, McGowan purchased 8 cents worth of candy and gum from Stephen Rowe, a liquor clerk in an Encinitas Mayfair Market. He handed a dollar bill to the clerk who rang up the purchase, opening the cash drawer of the register, McGowan said ''I have change,'' then threw some coins on the counter with such force they fell to the floor. The clerk bent over to retrieve the change. McGowan said there was a penny by a liquor bottle on the bottom shelf. The clerk stood up and saw only one twenty dollar bill in the register's cash drawer where there had been several before. He saw McGowan still standing by the counter and a taller man, Martin, running away. The clerk chased Martin out the store's exit, yelling for him to stop. Martin turned, started back toward the clerk, then engaged in a scuffle with Pat Collins, a box boy employed by Mayfair.

Martin shook free from the box boy and ran to a car. McGowan had already entered the car and Martin entered it as it started moving off, driven by a third person. The car was accelerated rapidly, its tires spinning. The box boy and clerk both could identify all but the last two numbers of the car's license plate.

The clerk told the store's manager to call the sheriff's department. $240.38 was missing from the cash register.

Responding to an all points bulletin concerning the Mayfair theft, Sheriff's Sergeant Justice saw the suspect's car traveling in the opposite direction to his car's course. As he turned his car around, he noticed someone running up a bank from the suspects' car. Sergeant Justice chased and stopped the car. He ordered the occupants, McGowan and Dandy from the car, arrested them and turned them over to other officers who arrived to back him up. Sergeant Justice and two other officers then searched for and found Martin lying face down in some brush about 200 yards away. Martin said he was hitchhiking and had gone up to where he was arrested because he was tired.

Each defendant had four twenty dollar bills in a pocket separate from where he had other money on his person.

 Dandy contends the evidence is insufficient to convict him as an aider and abettor of the burglary. Witnesses saw three Negroes at Mayfair Market. They saw Martin and Mc-

Gowan in the market and entering a getaway car driven by a third Negro. No one at Mayfair saw the driver well enough to identify him. Ten or fifteen minutes later Sergeant Justice apprehended Dandy, a Negro, in the getaway car with what the jury could reasonably believe to be a third of the loot in his pocket. The evidence sufficiently supports the jury's determination Dandy aided and abetted the burglary by acting as a getaway driver. His knowledge and share in the criminal intent may reasonably be inferred from his share in the spoils.

Dandy also contends he was not given a fair trial because the court made statements which could inflame racial prejudice of the jury. Before evidence was taken, the court explained to the jury the presumption of innocence, stating it was rebuttable rather than conclusive. As an example the court used the conclusive presumption of legitimacy where a child is born to a married couple living together where the husband is not impotent. Perhaps without thinking the court emphasized its example by saying it would apply even though the married couple were Caucasian and the baby black. The defendants did not request any admonition to the jury. While we do not condone the court's conduct we feel any embarrassment would not reasonably have inflamed the jury against the defendants' race. Whatever adverse effect the statement may have had could have been cured by a prompt admonition had one been requested. The failure to object and ask for an admonition at the trial precludes raising the point on appeal (*People* v. *Clay,* 227 Cal.App.2d 87, 101-102 [38 Cal. Rptr. 431, 100 A.L.R.2d 1421]).

Dandy complains of two instances where the court sustained defense objections to questions which assumed facts not in evidence. Not only were the rulings favorable to the defense but the court admonished the jury to disregard any implications arising from the asking of the questions.

Dandy also complains the court erred by comparing the size of his mustache with McGowan's mustache. The point is frivolous.

McGowan and Martin claim the court erroneously commented on the elements of conspiracy in a case where conspiracy was not charged in the information. The comments were made by the court to explain why it dismissed grand theft counts against all defendants. The court formally instructed the jury on aiding and abetting and on conspiracy. No error is assigned regarding the formal instructions. The informal comment was substantially the same as the formal

conspiracy instruction. Criminal conspiracy may be proved and conspiracy instructions given although no conspiracy is charged. (*People* v. *Bazaure,* 235 Cal.App.2d 21, 36 [44 Cal. Rptr. 831].)

McGowan cites questioning of the store clerk by the court as error. The court asked the clerk "Did you see Mr. Mc-Gowan step up to the counter when he first came up." At that time no one had identified McGowan as the purchaser of the candy. McGowan objected to the question and the court withdrew it admonishing the jury to disregard it. ■ The court also allowed the deputy district attorney to ask Mc-Gowan to stand so the clerk could compare McGowan's height to that of the candy purchaser. It is now claimed this constituted an unfair "lineup" within the holding of *United States* v. *Wade,* 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926]. This was not a police lineup but an in-court identification. Requiring a defendant to stand, assume a pose, speak, or otherwise exhibit himself for identification purposes does not infringe upon his rights against self-incrimination (*People* v. *Lopez,* 60 Cal.2d 223, 244 [32 Cal.Rptr. 424, 384 P.2d 16]).

■ McGowan also claims prejudice because the court examined the clerk regarding McGowan's mustache, asked him to compare the candy purchaser's mustache to Dandy's and to the mustache McGowan wore at trial. At one point the court asked if the candy purchaser's mustache was as large as McGowan's mustache at trial. The clerk said it was not. The court asked "He had a very much smaller mustache at that time?" The clerk said he had. Again, McGowan had not been identified by the clerk as the candy purchaser. The court's question assumed or implied the court's belief McGowan was the candy purchaser. However, no objection was made and no admonition of the jury requested. Whatever prejudice which might have resulted from the court's questioning dissolved when two other eyewitnesses placed McGowan inside the store and getting away in the car. Moreover, the arresting officers found candy on the street around McGowan's person.

■ McGowan and Martin contend the court erroneously commented on their failure to testify by instructing the jury in the words of CALJIC 51 (Re-revised) that no inference of guilt may be drawn from defendants' failure to testify (*People* v. *Molano,* 253 Cal.App.2d 841 [61 Cal.Rptr. 821, 18 A.L.R.3d 1328]). The defendants requested the instruction. Giving the instruction when requested by the defense is not error. (*People* v. *Mason,* 259 Cal.App.2d 30, 40 [66 Cal.Rptr. 601].)

McGowan and Martin claim the trial court improperly dismissed the grand theft counts against the defendants. We are not persuaded any prejudice to defendants results from a dismissal of charges against them. No objection to the dismissals was voiced by the defendants at trial.

█ Martin claims he was denied effective aid of counsel because he and Dandy were represented at trial by the same attorney and a conflict of interest existed between them. The attorney was not appointed by the court but was retained by Dandy and Martin. No request by Martin or Dandy was made at trial for separate counsel and it is questionable, absent extreme circumstances, whether the court could have required either Martin or Dandy to accept different representation without their consent. (*Smith* v. *Superior Court,* 68 Cal.2d 547, 560-562 [68 Cal.Rptr. 1, 440 P.2d 65].)

Here the court did not participate in the process of Martin's attorney selection. *People* v. *Chacon,* 69 Cal.2d 765 [73 Cal.Rptr. 10, 447 P.2d 106] and *People* v. *Baker,* 268 Cal.App.2d 254 [73 Cal.Rptr. 758], relied upon by Martin, are not in point as those cases involved court-appointed counsel. The question involved in those cases was whether the court should carefully examine potential conflicts of interest before appointing one attorney to represent two codefendants. A court undertaking the burden of appointing counsel takes on the burden of avoiding conflicts which may result from appointing an attorney to dual representation. Where codefendants choose to be represented by one attorney, make no objection to that representation or request they be allowed to secure separate counsel at the trial, they, as with invited error, may not raise the issue on appeal absent a showing the trial was reduced to a farce or a sham. This is the appellate burden of one claiming inadequate legal representation (*People* v. *Ibarra,* 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487] ; *People* v. *Massie,* 66 Cal.2d 899, 911 [59 Cal.Rptr. 733, 428 P.2d 869]). To hold otherwise would allow criminal defendants to create appellate issues by exercising their undoubted right to counsel of their choice.

Martin's trial was not reduced to a farce or a sham. He was positively identified by three witnesses at the scene of the crime and fleeing the scene. He was seen running from the getaway car and when apprehended gave the rather unpersuasive excuse he was a hitch-hiker resting face down in the brush 200 yards from where the car was stopped. He had one-third of the burglary proceeds in his pocket. Counsel did as

well as might be expected of one faced with a strong People's case.

Moreover, there appears to be no conflict of interest involved in defending both Dandy and Martin. It was not necessary to implicate one to exonerate the other. The question concerning both defendants was primarily one of identity. (See *People* v. *Watkins,* 248 Cal.App.2d 603, 606-607 [56 Cal.Rptr. 734]; *People* v. *George,* 259 Cal.App.2d 424, 432-433 [66 Cal.Rptr. 442].)

Judgments affirmed.

Coughlin, J., and Whelan, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied April 17, 1969.