[Crim. No. 3418.   Fourth Dist., Div. Two.   Aug. 29, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. JOHN THOMAS BRADY, Defendant and Appellant.

John E. Hart, under appointment by the Court of Appeal, Mitchell & Hart and Mitchell, Hart & Brisco for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Philip C. Griffin, Deputy Attorney General, for Plaintiff and Respondent.

KERRIGAN, J.—Defendant appeals a jury conviction of grand theft (Pen. Code, §§ 484-487) wherein he defrauded the owner of an auto agency of $1,600 by selling him a stolen car.

The defendant, John Thomas Brady, rebuilt salvaged automobiles for a living. He frequently used the pseudonym "Bill Iverson." On August 29, 1967, someone known as "Bill Iverson" purchased a chassis from a Compton salvage firm which had been removed from a damaged Volkswagen.

On September 26, 1967, a Model 1966 white square-back Volkswagen [station Wagon] was stolen in Long Beach. On September 30, 1967, the defendant offered to sell a Model 1966 white square-back Volkswagen to a Garden Grove auto sales agency. The salesman on duty knew the defendant as "Bill

Iverson.'' The salesman advised the defendant that he could not buy the car then as the owner was not on the lot at the time. The defendant said he would leave the car there.

Within two hours, the car was sold to Robert Seifert. The salesman drew up a conditional sales contract for the vehicle. The vehicle identification number [VIN] of the 1966 Volkswagen station wagon was identical with the VIN appearing on the salvaged Volkswagen chassis.

On October 2, 1967, the defendant returned to the Garden Grove auto agency and presented the owner with certain documents purporting to prove ownership of the car. One of the documents was an official re-registration of a dismantled or wrecked vehicle dated September 28, 1967, which bore the forged signature of a clerk of the Bellflower office of the Department of Motor Vehicles. The auto agency owner gave the defendant a $1,600 check for the car. The check designated ''Bill Iverson'' as payee. The check was personally indorsed by ''Bill Iverson'' and deposited in his account in the East Compton branch of the Bank of America. The defendant had been observed in the East Compton bank on several occasions.

Chemical tests were conducted on the 1966 Volkswagen purchased by Seifert. The chassis on the stolen Volkswagen had been removed and replaced with the salvaged chassis. An attempt was made to obliterate the engine number on the stolen Volkswagen and to substitute a different number. The Volkswagen was identified by the owner as the stolen car.

The defendant maintains that the judgment of conviction should be reversed on the following grounds: (1) The trial court committed constitutional error in instructing the jury that the defendant had a right not to testify (CALJIC 51 [Re-rev.]); (2) the trial court abused its discretion in not granting his motion for a change of counsel and a continuance of the trial date; (3) his motion to dismiss the information was erroneously denied; and (4) the evidence was insufficient to sustain the conviction.

The trial court instructed the jury in the language of CALJIC 51 (Re-rev.). The instruction was given at the prosecution's request without objection by the defense, and reads as follows: ''It is a constitutional right of a defendant in a criminal trial that he may not be compelled to testify. Thus, the decision as to whether he should testify is left to the defendant, acting with the advice and assistance of his attorney. You must not draw any inference of guilt from the fact

that he does not testify, nor should this fact be discussed by you or enter into your deliberations in any way.''

The Fifth and Fourteenth Amendments of the United States Constitution forbid either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt. (*Griffin* v. *California*, 380 U.S. 609, 615 [14 L.Ed.2d 106, 110, 85 S.Ct. 1229].)

No contention is made that the prosecutor commented on the defendant's failure to testify, nor did the court inform the jury that his silence could be construed as evidence of guilt. However, defendant maintains that the instruction is violative of the *Griffin* rule.

The California authorities are not entirely consistent as to whether the giving of the instruction is proper or constitutes error. There are four principal situations where the propriety of the instruction has become a serious issue in California cases: (1) The trial judge fails to give the instruction *sua sponte* (*People* v. *Elliott*, 241 Cal.App.2d 659, 667-668 [50 Cal.Rptr. 757]; *People* v. *Graham*, 251 Cal.App.2d 513, 518-519 [59 Cal.Rptr. 577]; *People* v. *Horrigan*, 253 Cal.App.2d 519, 522-523 [61 Cal.Rptr. 403]); (2) the trial judge gives the instruction *sua sponte* (*People* v. *Brown*, 253 Cal.App.2d 820, 830 [61 Cal.Rptr. 368]); (3) the prosecution requests the instruction (*People* v. *Molano*, 253 Cal.App.2d 841, 846-847 [61 Cal.Rptr. 821, 18 A.L.R.3d 1328]; *People* v. *Northern*, 256 Cal.App.2d 28, 31 [64 Cal.Rptr. 15]; *People* v. *Hernandez*, 264 Cal.App.2d 206 [70 Cal.Rptr. 330]); (4) the defendant requests the instruction (*People* v. *Parker*, 253 Cal.App.2d 567, 571-572 [61 Cal.Rptr. 411]; *People* v. *Giovannini*, 260 Cal.App.2d 597, 606 [67 Cal.Rptr. 303]; *People* v. *McGowan*, 269 Cal.App.2d 740, 744 [75 Cal.Rptr. 53].)

In *People* v. *Brown*, *supra*, 253 Cal.App.2d 820, it was held proper for the court to give the instruction *sua sponte* or at the prosecution's request; in *People* v. *Horrigan*, *supra*, 253 Cal.App.2d 519, 522-523, the court ruled that it would have been error to give the instruction *sua sponte*; in *People* v. *Elliott*, *supra*, 241 Cal.App.2d 659, the court did not decide the issue whether it was error for the trial court not to instruct the jury *sua sponte* but merely held that the proof of guilt was strong and, therefore, no miscarriage of justice (see also *People* v. *Graham*, *supra*, 251 Cal.App.2d 513, 518-519); in *People* v. *McGowan*, *supra*, 269 Cal.App.2d 740, held not error when given at defendant's request; in *People* v. *Parker*, *supra*, 253 Cal.App.2d 567, 571-572, the court did not deter-

mine whether it was error to give the instruction at the defendant's request, but held that if erroneous, it was not prejudicial (see also *People* v. *Giovannini, supra,* 260 Cal. App.2d 597) ; in *People* v. *Molano, supra,* 253 Cal.App.2d 841, 846-847, it was deemed error to give the instruction over the defendant's objection; in *People* v. *Northern, supra,* 256 Cal. App.2d 28, it was not decided whether it was error to give the instruction over defendant's objection, but assuming error, not prejudicial; in *People* v. *Mason,* 259 Cal.App.2d 30 [66 Cal.Rptr. 601], held not prejudicial where the prosecution requested the instruction without objection; in *People* v. *Hernandez, supra,* 264 Cal.App.2d 206, instruction given at prosecution's request and held not error to give the instruction even assuming defendant's objection but, if error, it was nonprejudicial.

Federal law requires that an instruction substantially similar to CALJIC 51 (Re-rev.) be given if defendant requests it. (*Bruno* v. *United States,* 308 U.S. 287 [84 L.Ed. 257, 60 S.Ct. 198] ; 18 U.S.C.A. § 3481.) Since it is reversible error to deny defendant's request for such an instruction, federal courts have reasoned that it is proper for the trial court to give the instruction *sua sponte.* (*Hanks* v. *United States* (10th Cir. 1968) 388 F.2d 171, 175; *Bellard* v. *United States* (5th Cir. 1966) 356 F.2d 437, 439, cert. den. 385 U.S. 856 [17 L.Ed.2d 83, 87 S.Ct. 103] ; *Chadwick* v. *United States* (5th Cir. 1941) 117 F.2d 902, 904-905.)

The instruction may become an issue in the following factual situations: (1) The court gives the instruction *sua sponte* without objection; (2) the court gives the instruction *sua sponte* over prosecution's objection; (3) the court gives the instruction *sua sponte* over defendant's objection; (4) the court gives the instruction over objection of both parties; (5) the court fails to give the instruction because not requested by either party; (6) instruction given at prosecution's request without objection; (7) instruction refused although requested by prosecution without objection by defendant (8) instruction given at prosecution's request over defendant's objection; (9) instruction given at defendant's request without objection; (10) instruction refused although requested by defendant without objection; (11) instruction given at defendant's request over prosecutor's objection; (12) instruction refused when requested by defendant because of prosecutor's objection; (13) instruction given at request of

both parties; (14) instruction refused although requested by both parties.

The purpose of the *Griffin* rule is to prevent the accused's exercise of his constitutional privilege against self-incrimination from being judicially emphasized as affirmative evidence against him. (*People* v. *Beghtel*, 239 Cal.App.2d 692, 696 [49 Cal.Rptr. 235].)

The instruction involved herein does not state that the defendant's silence may be construed as an indication of guilt. It is patently obvious to the jury when the accused fails to take the stand, and the instruction admonishes the jurors that the defendant is exercising his constitutional right in not testifying, and that his failure to testify is not to be considered in determining his innocence or guilt.

The instruction in its present form (CALJIC 51 [Re-rev.]) is not violative of *Griffin* and constitutes an accurate affirmation of the accused's constitutional right against self-incrimination.

We hold that it is not necessary for the trial court to give the instruction *sua sponte* but, if given by the court of its own volition, or at the request of the prosecution or the defendant, with or without objection, the instruction is proper.

Defendant next maintains that the trial court should have granted his request for a continuance of the trial date so as to enable him to obtain counsel of his own choice. A defendant has no absolute right to be represented by a particular attorney; however, the courts should make a reasonable effort to insure that a defendant financially able to retain an attorney of his own choice can be represented by that attorney. (*People* v. *Crovedi*, 65 Cal.2d 199, 207 [53 Cal. Rptr. 284, 417 P.2d 868].) A defendant's desire to be represented by counsel of his own choice can constitutionally be forced to yield only where it will result in significant prejudice to the defendant himself, or in a disruption of the ordinary process of justice unreasonable under the circumstances of the particular case. (*People* v. *Durham*, 70 Cal.2d 171, 191 [74 Cal.Rptr. 262, 449 P.2d 198].) The burden is on the defendant to establish an abuse of discretion in denying his request for change of counsel and, unless there has been a miscarriage of justice, a reviewing court will not substitute its opinion and thereby divest the trial court of its

discretionary power. (*People* v. *Smyers*, 261 Cal.App.2d 690, 701 [68 Cal.Rptr. 194].)

■ The matter of continuance to obtain counsel is traditionally within the discretion of the trial court, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel; there are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process; the answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied. (*Ungar* v. *Sarafite*, 376 U.S. 575, 589 [11 L.Ed.2d 921, 931, 84 S.Ct. 841].) ■ Due process is not denied every defendant who is refused the right to defend himself by means of his chosen retained counsel; other factors, including the speedy disposition of criminal charges, demand recognition, particularly where defendant is inexcusably dilatory in securing legal representation. (See *People* v. *Crovedi*, *supra*, 65 Cal.2d 199, 206 [53 Cal.Rptr. 284, 417 P.2d 868].)

■ Unlike cases in which a conviction was reversed for failure to grant a continuance to obtain counsel of defendant's own choosing (see *People* v. *Byoune*, 65 Cal.2d 345 [54 Cal.Rptr. 749]; *In re Masching*, 41 Cal.2d 530 [261 P.2d 251]), the case under review does not involve the filing of additional charges just before trial, illness of defendant or his chosen counsel, or any other circumstances beyond defendant's control. No abuse of discretion occurs where defendant is given a reasonable opportunity to obtain counsel of his choice. (*People* v. *Smyers*, *supra*, 261 Cal.App.2d 690 [68 Cal. Rptr. 194]; *People* v. *Morris*, 226 Cal.App.2d 12, 15 [37 Cal. Rptr. 741].)

Here, the preliminary examination was held on February 21, 1968, and the defendant was represented by retained counsel. On March 27, 1968, the superior court set the matter for trial for May 22. On the night preceding the trial, the defendant apparently picked up his file from his retained attorney and sought other representation. He desired a substitution because his counsel was a Los Angeles Negro attorney and, facing trial before an Orange County jury, defendant believed [being white] that his case might be prejudiced in having an out-of-town black lawyer.

While there had been no prior continuance of the trial date, there was no logical explanation given for the defendant's

waiting until the eve of trial before attempting to obtain substitute counsel. ▮ A defendant in a criminal case who desires to retain counsel is required to act with some degree of promptness and diligence. (*People* v. *Lee*, 249 Cal.App.2d 234, 241 [57 Cal.Rptr. 281].) ▮ A defendant may not demand a continuance if he is unjustifiably dilatory in obtaining counsel or if he arbitrarily desires to substitute counsel at the time of trial. (*People* v. *Farley*, 267 Cal.App.2d 214, 220-221 [72 Cal.Rptr. 855].) ▮ When defendant appeared for trial, an Orange County attorney and his Los Angeles counsel were both present. The local lawyer indicated that he was not prepared for trial and that he would be doing the defendant a disservice by trying the case that day. Defendant knew when he retained his Los Angeles attorney that the latter was a Negro, and during the 60-90-day period between the preliminary examination and scheduled trial date, he was out on bail and had an opportunity to hire another lawyer. The trial court might well have concluded that his fear that Orange County jurors would be prejudiced against him because of the color of his attorney's skin was unfounded. Moreover, the defendant did not act promptly or diligently in securing another attorney. The trial judge's action in denying the motion for continuance so that defendant could obtain local counsel was proper. Consequently, there was no abuse of discretion in denying the motion for continuance.

▮ Defendant next maintains that the evidence introduced at the preliminary hearing was insufficient to establish probable cause for believing that he had committed the crime of grand theft in obtaining property by false pretenses. He asserts that the trial court erred in denying his motion to dismiss the information as there was no proof introduced at the preliminary hearing that he cashed the $1,600 check. At the preliminary hearing, the auto dealer testified that he gave Iverson the check and later endeavored to stop payment when he received information that the car might have been stolen, and that the check had not cleared his bank. [Later, at trial, it was conclusively established that the $1,600 check was cashed by Iverson.] In effect, the defendant argues that there was no proof of a completed crime in that the victim did not suffer a financial loss.

▮ If the victim is induced to part with money or property in exchange for other property fraudulently misrepresented, the crime is committed; it is not a defense that

no permanent loss occurred; the victim is defrauded if he did not get what he bargained for, even though he may not have suffered a net financial loss; the victim is defrauded even though he may eventually recover the money or property taken from him (*People* v. *Bryant,* 119 Cal. 595, 597 [51 P. 960]), and subsequent restoration, restitution or repayment is no defense. (*People* v. *Hand,* 127 Cal.App. 484, 487 [16 P.2d 156].)

■ The crime of theft by false pretenses is complete when, by means of such false pretenses, the fraud intended is consummated by obtaining possession of the property sought: the victim is merely a witness whose ultimate financial gain or loss, in the circumstances, is immaterial; financial loss is not a necessary element of the crime. (*People* v. *Andrews,* 165 Cal. App.2d 626, 639 [332 P.2d 408] ; see *Buck* v. *Superior Court,* 232 Cal.App.2d 153, 159 [42 Cal.Rptr. 527, 11 A.L.R.3d 1064] ; *People* v. *Kemp,* 124 Cal.App.2d 683, 688 [269 P.2d 186].)

■ Defendant also argues that there was no evidence at the preliminary hearing that he knew or should have known the car was stolen, or that he had anything to do with the theft. However, evidence was introduced which showed that the vehicle and engine identification numbers had been altered, from which the magistrate could infer that defendant knew the car was stolen. ■ Guilty knowledge may be inferred from the facts proved. (*People* v. *Reed,* 190 Cal.App. 2d 344, 353 [11 Cal.Rptr. 780].)

■ Here, the evidence introduced at the preliminary hearing established the following facts: The Model 1966 Volkswagen had been stolen; defendant was in possession of the stolen car; he left it at the auto agency after offering to sell it for $1,600; he furnished the dealer with forged evidence of title, and he received a $1,600 check as consideration for the car. A prima facie case of obtaining money or property under false pretenses was established when the dealer was induced to part with the check in exchange for the car.

■ Finally, defendant maintains that the evidence was insufficient to sustain his conviction of grand theft. He contends there was no evidence that he ever made any representation that he was the owner of the 1966 Volkswagen, and there was no evidence that he knew that the Volkswagen had been stolen or that the documents of title were imperfect.

■ To establish a theft by false pretenses, it is necessary that the defendant made a false pretense or representation with intent to defraud the owner of his property, and to prove that the owner was, in fact, defrauded. (*People* v. *Ashley,* 42 Cal.2d 246, 259 [267 P.2d 271].) ■ To establish the commission of the crime of grand theft sounding in false pretenses, the following factors must be proved: (1) The making of a false representation; (2) knowledge that the representation is false with intent to deprive the owner of his property; and (3) proof that the owner was actually defrauded and that he parted with his property in reliance on false representations. (*People* v. *Parker,* 235 Cal.App.2d 86, 92 [44 Cal.Rptr. 900]; *People* v. *Platt,* 124 Cal.App.2d 123, 132 [268 P.2d 529].) ■ Intent to defraud is an essential element of grand theft by false pretenses, but such intention is inferrable from the facts. (*People* v. *Conlon,* 207 Cal.App. 2d 86, 92 [24 Cal.Rptr. 219]; *People* v. *Henderson,* 79 Cal. App.2d 94, 118 [179 P.2d 406].) Knowledge may also be inferred. (*People* v. *Reed, supra,* 190 Cal.App.2d 344, 353 [11 Cal.Rptr. 780].)

■ Proof of a false factual representation need not be by words alone; it may be implied from conduct; it may be made either expressly or by implication; the form of the words in which the pretense is couched is immaterial; if the words or conduct are intended to create the impression that defendant is making a representation as to a present fact, the pretense is within the statute. (*People* v. *Staver,* 115 Cal.App. 2d 711, 717 [252 P.2d 700]; *People* v. *Mace,* 71 Cal.App. 10, 21 [234 P. 841].)

■ While defendant strongly urges that there was no proof that he was involved in a theft of the Volkswagen, he was not convicted of auto theft but of inducing the auto agency owner to part with $1,600 for the stolen automobile. The evidence of his guilt was overwhelming. The jury could have inferred that he purchased the damaged chassis using the name of "Bill Iverson," or that it was purchased in his behalf; he presented the false and forged documents depicting title to the auto agency; and he offered to sell the stolen car by use of forged documents of ownership, for which he received the $1,600 check in which "Bill Iverson" was designated as payee; the check was deposited in the Bank of America bank account of Bill Iverson and he had been seen in the bank on several occasions; he was identified as being the same person as Bill Iverson; since he was in the business of

rebuilding salvaged automobiles, it can be inferred that he possessed the tools for changing identification numbers. The foregoing evidence was sufficient to sustain his conviction.

The judgment of conviction is affirmed.

McCabe, P. J., and Gardner, J. pro tem.,* concurred.

A petition for a rehearing was denied September 18, 1969, and appellant's petition for a hearing by the Supreme Court was denied October 22, 1969.

---

*Assigned by the Chairman of the Judicial Council.