[Crim. No. 18057. First Dist., Div. Four. May 12, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
DUANE ROBERT BLAKE, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Robert P. Mason, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Robert R. Granucci and Michael Buzzell, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

CALDECOTT, P. J.—Appellant Duane Robert Blake was convicted, following a jury trial, of two counts of kidnaping (Pen. Code, § 209) and two counts of robbery, both first degree (Pen. Code, § 211). The jury further found that he used a firearm in the commission of each offense. The appeal is from the judgment.

During the evening of January 7, 1977, William and Maud Nelson were leaving a restaurant in Berkeley. As they walked to their vehicle, they were approached by a young woman subsequently identified as Pier Fuller. Pier told the Nelsons that she was out of gas. They replied they would be happy to help her. Pier left and returned with appellant. The Nelsons, Pier and appellant entered the Nelsons' car. Suddenly, appellant produced a handgun and directed Mr. Nelson to enter Interstate 80 at the University Avenue ramp. Pointing the pistol at the back of Mr. Nelson's head, appellant said, "Don't try anything funny, because if you do, I will blow both you and your wife away." During the round trip which covered Interstate 80 to the intersection of Highway 4, a stretch of Highway 4, and back on Interstate 80, appellant, at gunpoint, ordered Mrs. Nelson to give her purse and jewelry to Pier. He then reached over and removed Mr. Nelson's wallet and checkbook. Appellant and Pier left the car in Richmond.

The Nelsons identified appellant at a physical lineup, the preliminary hearing, and also at trial. The trial testimony of the victims was corroborated by both Pier Fuller, appellant's accomplice, and Cindy Thomas, his girl friend. Thus, Pier Fuller, who testified for the prosecution under a grant of immunity, identified appellant as her male

companion during the commission of the offenses charged. Miss Thomas, in turn, confirmed that the credit cards taken from the Nelsons were in appellant's possession after the perpetration of crimes in question. More specifically, Miss Thomas testified that the Nelsons' Master Charge card was given to her while the Bank Americard belonging to the Nelsons was given by appellant to Yvette Bradley, his cousin. Miss Thomas likewise revealed that appellant admitted to her that he had robbed the Nelsons and had taken their credit cards.

Testifying on his own behalf, appellant offered an alibi defense. He claimed that on the evening in question he was suffering from flu and stayed at his sister's house in Richmond watching television and talking with friends, and that he did not leave his sister's house that night. He also introduced testimony that Pier Fuller had a bad reputation for truthfulness and veracity and that she was biased against him for the reason that the relationship between them broke off because of another woman.

I

Appellant's first contention on appeal is that the trial court committed prejudicial error by denying substitution of attorneys without making a factual inquiry into the matter and without permitting him to state the reasons why he requested the substitution of trial counsel. (*People* v. *Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44]; see also *People* v. *Lewis* (1978) 20 Cal.3d 496 [143 Cal.Rptr. 138, 573 P.2d 40]; *People* v. *Munoz* (1974) 41 Cal.App.3d 62 [115 Cal. Rptr. 726].)

While *Marsden* and its progeny enunciated the rule that a judge who *denies* a motion for substitution of attorneys solely on the basis of his courtroom observations, despite a defendant's offer to relate specific instances of misconduct, abuses the exercise of his discretion to determine the competency of counsel and that under established law the trial court's failure to comply with the above stated mandate is prejudicial per se regardless of the adequacy of legal representation (*People* v. *Lewis, supra*, 20 Cal.3d at p. 499; *People* v. *Munoz, supra*, 41 Cal. App.3d at p. 66; see also *People* v. *Crovedi* (1966) 65 Cal.2d 199, 206 [53 Cal.Rptr. 284, 417 P.2d 868]), appellant's argument must fail for the simple reason that no *Marsden* error occurred in the instant case.

This case does not present a *Marsden* problem. A review of the record reveals that at no time did the court deny appellant's request to hire his own attorney instead of the public defender; in fact, the judge stated he would allow a substitution of counsel. The only question presented to the court was whether the case should be continued for the purpose of substituting a privately retained attorney for the public defender.

The question of substitution was raised, but not for the first time, on January 25, 1978, the day before the trial. The colloquy that took place on that day shows that the master calendar judge did not deny appellant's request for substitution of attorney but rather, suggested that the matter be raised before the trial judge to whom the case was assigned.

The question of substitution was raised again the next morning, the first day of the trial. However, the record is clear that all that trial counsel requested was continuance for the purpose of hiring a private attorney. While appellant's motion for continuance was denied on that occasion, the trial court indicated that the private attorney may associate with the public defender if he so desired.

Finally, and perhaps more importantly, the record is explicit that when appellant's attorney moved for substitution of counsel and continuance on the second day of the trial, the court expressly ruled that such substitution would be allowed but due to the fact that the trial had already started, it denied continuance.

█ Thus, the issue in the present case is not whether the trial court denied appellant's motion for substitution of attorney contrary to the mandate of *Marsden*, but rather whether the trial court abused its discretion in denying appellant's request for continuance in order to secure private counsel.

In answering this crucial question, initially we set out the principles governing the trial court's power to grant continuance. █ As has been firmly established, due process of law comprises a right to appear and defend with retained counsel of one's own choice. (*People v. Crovedi, supra*, 65 Cal.2d 199, 206; *People v. Byoune* (1966) 65 Cal.2d 345, 346 [54 Cal.Rptr. 749, 420 P.2d 221].) However, a defendant who desires to retain his own counsel is required to act with diligence and may not demand a continuance if he is unjustifiably dilatory or if he ar-

bitrarily desires to substitute counsel at the time of the trial. (*People* v. *Farley* (1968) 267 Cal.App.2d 214 [72 Cal.Rptr. 855]; *People* v. *Lee* (1967) 249 Cal.App.2d 234 [57 Cal.Rptr. 281].) To put it another way, the right of a defendant to appear and defend with retained counsel of his own choice is not absolute (*People* v. *Brady* (1969) 275 Cal.App.2d 984, 992 [80 Cal.Rptr. 418]); "it must be carefully weighed against other values of substantial importance, such as that seeking to ensure orderly and expeditious judicial administration, with a view toward an accommodation reasonable under the facts of the particular case." (*People* v. *Byoune, supra,* 65 Cal.2d at p. 346.) ▮ It is likewise settled that it is within the sound discretion of the trial court to determine whether a defendant shall be granted a continuance to obtain a private counsel (*People* v. *Smyers* (1968) 261 Cal.App.2d 690 [68 Cal.Rptr. 194]); that there is no mechanical test for deciding whether a denial of a continuance is so arbitrary as to violate due process but rather each case must be decided on its own facts (*Ungar* v. *Sarafite* (1964) 376 U.S. 575, 589 [11 L.Ed.2d 921, 930-931, 84 S.Ct. 841]; *People* v. *Doebke* (1969) 1 Cal.App.3d 931, 939 [81 Cal.Rptr. 391]); that the burden is on the defendant to establish an abuse of discretion; and that in the absence of showing an abuse, the reviewing court will not disturb the ruling of the trial court. (*People* v. *Brady, supra,* 275 Cal.App.2d at pp. 992-993.)

When viewed in light of the foregoing premises the instant record shows that appellant was granted several continuances between March 1977 and commencement of trial on January 26, 1978, and was given numerous opportunities to hire an attorney of his own choice and as a consequence the trial court's denial of a further continuance after the commencement of the trial cannot be deemed an abuse of its discretion.

The record on appeal demonstrates that as early as March 21, 1977, appellant asked for, and was granted a continuance of two weeks for the purpose of securing a private attorney. Appellant received another continuance of two weeks on April 22, 1977, and yet another of six days on December 15, 1977. Moreover, the record reflects that although appellant was on bail for some period prior to the commencement of the trial and thus he had the opportunity to personally hire his own attorney, he failed to do so up until the second day of the trial. It is, of course, well settled that where, as here, the appellant has been provided a reasonable opportunity to obtain counsel of his own choice, no abuse of discretion occurs if the trial court fails to grant an additional con-

tinuance at or after the commencement of the trial. (*People* v. *Brady, supra*, 275 Cal.App.2d at p. 993; *People* v. *Smyers, supra*, 261 Cal. App.2d 690 at pp. 700-701; *People* v. *Morris* (1964) 226 Cal.App.2d 12, 15 [37 Cal.Rptr. 741].)

## II

■ Appellant's second major contention is that the trial court committed prejudicial error by giving to the jury an instruction based upon former CALJIC No. 22 (rev.).[1]

In *People* v. *Brigham* (1979) 25 Cal.3d 283 [157 Cal.Rptr. 905, 599 P.2d 100], upon which appellant's claim is predicated, our Supreme Court has disapproved former CALJIC No. 22 on the ground that it "may allow a juror to conclude that he or she could return a guilty verdict based on a strong and convincing belief which is something short of having been 'reasonably persuaded to a near certainty'" (*People* v. *Brigham, supra*, at p. 291), as required by law. (*People* v. *Hall* (1964) 62 Cal.2d 104, 112 [41 Cal.Rptr. 284, 396 P.2d 700].)

Although the Supreme Court in *Brigham* made its ruling retroactive (p. 292, fn. 15), we believe the error complained of by appellant must be held harmless for two major reasons. First, it is basic law that the correctness of an instruction is to be determined in its relation to the other instructions and in light of the instructions as a whole. (*People* v. *Wingo* (1973) 34 Cal.App.3d 974 [110 Cal.Rptr. 448]; *People* v. *Rhodes* (1971) 21 Cal.App.3d 10, 21 [98 Cal.Rptr. 249]; *People* v. *Shaw* (1965) 237 Cal.App.2d 606, 623 [47 Cal.Rptr. 96].) In the case at bench, the record shows that the jury was given CALJIC No. 2.90, which correctly defined reasonable doubt,[2] and also CALJIC No. 2.91,

---

[1]The trial court instructed the jury in the language of former CALJIC No. 22, by stating that: "The law does not require demonstration or that degree of proof which, excluding all possibility of error, produces absolute certainty, for such degree of proof is rarely possible. Moral certainty only is required, which is that degree of proof which produces conviction in an unprejudiced mind."

[2]The trial court defined reasonable doubt as follows: "A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to an acquittal. This presumption places upon the State the burden of proving him guilty beyond a reasonable doubt. Reasonable doubt is defined as follows: It is not a mere possible doubt; because everything relating to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge."

which elaborated on the necessity that the prosecution must prove the identity of the perpetrator beyond a reasonable doubt.[3] Secondly, and even more important, the evidence against appellant was not only substantial, but overwhelming. As described in detail, *supra*, the *Nelsons*, the victims of the crimes, identified appellant on three different occasions in a positive and unhesitating way. Pier Fuller, appellant's accomplice, also testified against him setting out the events surrounding the commission of the offenses and identifying appellant as the principal. Cindy Thomas, appellant's girl friend, rendered detailed testimony with respect to the purchases and attempted purchases with credit cards which had been taken from the Nelsons during the robbery and which had been given by appellant to the testifying witness and Yvette Bradley, appellant's relative. Thomas also testified that appellant admitted robbing the Nelsons and taking the credit cards from them. Given this state of evidence, "it is [not] reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) In *People v. Brigham, supra*, 25 Cal.3d 283 at page 292, the Supreme Court explicitly held that the error in giving former CALJIC No. 22 (rev.) was to be measured by the "*Watson* test." (See also *People v. McCullough* (1979) 100 Cal.App.3d 169, 183 [160 Cal.Rptr. 831].) Under these circumstances, the instruction error must be held harmless beyond any doubt.

## III

Appellant contends that Penal Code section 4019 entitles him to credit for "good time/work time," in addition to the time already credited against his sentence pursuant to Penal Code section 2900.5, for time spent in presentence custody attributable to the charges of which he stands convicted. In light of *People v. Sage* (1980) 26 Cal.3d 498 [162 Cal.Rptr. 450, 606 P.2d 757], as modified on April 30, 1980, appellant may be entitled to additional conduct credit for presentence jail time on or after July 1, 1977. It is unnecessary, however, to remand this

---

[3]The instruction given the jury on the proof of identification reads as follows: "Now the burden is on the State to prove beyond a reasonable doubt that the defendant is the person who committed the offense with which he is charged. You must be satisfied beyond a reasonable doubt of the accuracy of the identification of the defendant as the person who committed the offense before you may convict him. [¶] If from the circumstances of the identification you have a reasonable doubt whether the defendant was the person who committed the offense, you must give the defendant the benefit of that doubt and find him not guilty."

case for resentencing. Pursuant to *Sage*, the Department of Corrections is directed to compute the conduct credit administratively.

The judgment is affirmed.

Rattigan, J., and Poché, J., concurred.