Filed 8/31/15  P. v. Ramirez CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>BRYAN RAMIREZ et al.,<br><br>    Defendants and Appellants. | B254035<br><br>(Los Angeles County<br>Super. Ct. No. TA125611)<br><br>ORDER MODIFYING OPINION<br><br>[NO CHANGE IN JUDGMENT] |

BY THE COURT:

It is ordered that the opinion filed herein on August 19, 2015 be modified as follows:

On page 18, the caption after Section I should be deleted and instead the caption should read: *The Abstract of Judgment for Appellant Guerrero Must Be Amended*

On page 18, the second and third sentences under Section I should be deleted and instead the following three sentences should be added:

Guerrero was sentenced to midterm (3 years) as the base term on count 4, plus 10 years pursuant to section 186.22(b)(1)(C), for a total sentence on this count of 13 years.  Guerrero was also sentenced consecutively on count 7 to one-third the mid-term  (1 year) plus one-third of that count's enhancement  pursuant to section 186.22(b)(1)(C), for a total sentence of 4 years and four months. Guerrero's total aggregate consecutive term on counts 4 and 7 was 17 years and 4 months.

In light of this modification, the petition for rehearing is denied.

Filed 8/19/15  P. v. Ramirez CA2/3 (unmodified version)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>BRYAN RAMIREZ et al.,<br><br>    Defendants and Appellants. | B254035<br><br>(Los Angeles County<br>Super. Ct. No. TA125611) |

APPEAL from judgments of the Superior Court of Los Angeles County, John T. Doyle, Judge.  Affirmed with modification.

Linn Davis, under appointment by the Court of Appeal, for Defendant and Appellant, Bryan Ramirez.

Murray A. Rosenberg, under appointment by the Court of Appeal, for Defendant and Appellant, Carlo Guerrero.

H. Russell Halpern, under appointment by the Court of Appeal, for Defendant and Appellant, Jorge Jimenez.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Michael C. Keller and Russell A. Lehman, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

Appellants Ramirez, Guerrero and Jimenez challenge a number of claimed errors in their criminal trial and sentencing.

As discussed below, there is sufficient evidence to support the jury's finding on the gang enhancement and there was no instructional error as to that allegation. In addition, the trial court did not abuse its discretion in denying an untimely request to substitute counsel for appellant Jimenez. The court did not abuse its discretion in deciding not to bifurcate the gang enhancement allegations. Allowing the prosecutor to restate the hypothetical question posed to the gang expert in order to eliminate any reference to the actual victims or the appellants was not unduly prejudicial. And, the trial court's denial of appellant Jimenez's motion for a new trial was not erroneous.

The trial court did, however, incorrectly sentence appellant Ramirez on count 4, and the abstract of judgment for appellant Guerrero does not reflect his actual sentence.

Accordingly, the judgment of conviction against all three appellants is affirmed, but Ramirez's sentence is remanded to strike the 10 year sentence imposed on the gun enhancement on count 4 and the clerk of the court is directed to amend appellant Guerrero's abstract of judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

These appellants, in varied combinations, stole one vehicle, used it in the commission of an armed robbery and carjacking, used the carjacked vehicle to commit another armed robbery, stole a third vehicle and used it in the commission of another armed robbery. All of these crimes were committed during a period of less than twelve hours.

In the evening of September 16, 2012, appellants stole Jesus Luna's red Ford Expedition. Early the next morning, they used the Expedition in the commission of an armed robbery of Charae Harris. Minutes later, and less than a mile away from the location where they had robbed Harris, the appellants pulled a gun on Tolentina Martinez and carjacked her burgundy Chevrolet Astrovan.

A short time later, Elisandra Varela saw a red Expedition come to a stop on Aranbe Avenue near Pear Street -- close to Tolentina Martinez's house. Appellant Jimenez jumped out of the Expedition and ran toward Pear Street. When the Expedition was located by police, they found Harris' backpack. Harris' cellular telephone, wallet and keys were later located near appellant Jimenez's house on West Pear Street, along with a St. Louis Cardinals' cap and a second cellular telephone with the back cover bearing scratches of "Lokos," "CPT" and "LSX3."

That same morning and less than three miles from where the carjacking occurred, certain of the appellants drove up in the Astrovan and robbed Jessica Martinez. She was walking to school with a friend when she was robbed.

That same morning, Guadencio Ayala parked his white Toyota RAV4 on Kalmia Street -- less than two miles from where Jessica had been robbed. Ayala left his keys in the car while he went to get his friend. When he returned, his RAV4 was gone, but Tolentina Martinez's burgundy Astrovan was left in the middle of the street with the engine running.

Later that morning, a white RAV4 drove up and stopped next to Cristina Silva, who was walking her four year old son to a school bus stop on Glenwood Place in South Gate. Appellant Ramirez jumped out and walked toward Silva, pulled out a handgun and robbed her of her purse. Four miles from the location of the Silva robbery, police located the White RAV4. The RAV4 had graffiti in the interior and contained Silva's driver's license.

In an amended information, appellants Ramirez and Jimenez were charged with second degree robbery of Harris (count 1), the unlawful taking or driving of Luna's Ford Expedition (count 2), and carjacking Tolentina Martinez's Chevrolet Astrovan (count 3). Appellants Guerrero and Ramirez were charged with second degree robbery of Jessica Martinez (count 4). They were also charged with grand theft and the unlawful taking or driving of Ayala's RAV4 (counts 5 and 6) and second degree robbery of Silva (count 7). As to a number of these counts, it was further alleged that a principal was armed or that an appellant personally used a firearm. As to all of the

3

counts, it was alleged that the offenses were committed for the benefit of, at the direction, or in association with a criminal street gang with the specific intent to promote, further, or assist in criminal conduct by gang members.

Before trial, appellants moved to bifurcate trial on the gang allegations. The court denied these motions. In addition, the court heard and denied Attorney H. Russell Halpern's oral motion to substitute in as counsel for appellant Jimenez.

Trial was by jury. At trial, the prosecution admitted a digital recording of a telephone call placed by appellant Guerrero to his girlfriend Lety. In the initial part of the conversation, both confirm that they miss each other and that Lety is at Guerrero's mother's house. Later in the conversation, Guerrero asks Lety to retrieve some items from the attic, which she attempts to do without success. At one point, Guerrero tells Lety: "And the only reason they caught us is 'cause Peter [Cole].' "

Detective Mark Boisvert of the Los Angeles County Sheriff's Department was qualified and testified as the gang expert witness for the prosecution. He identified the Compton Varrio Lokos Trece as a Hispanic criminal street gang in Compton. The gang has around 140 members. Detective Boisvert testified on a number of issues, including the nature and composition of the Lokos Trece gang, its territory, its primary activities, the ways in which graffiti marks territory and communicates information, the appellants' membership in the Lokos, and certain predicate crimes committed by Lokos Trece gang members. Detective Boisvert also answered hypothetical questions to elicit his opinion whether, if such facts were true, he would conclude that the crimes in this case had been done in association with the Lokos Trece to assist in criminal conduct by gang members.

At the conclusion of the prosecution case, appellants Guerrero and Ramirez's moved for judgment of acquittal pursuant to section 1118.1[1] on certain offenses. The motion was granted as to the grand theft of Ayala's RAV4 and the personal use of a firearm against Appellant Ramirez on count 4 -- the robbery of Jessica Martinez. In

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

addition, the prosecution dismissed the charge and principal armed allegation against appellant Ramirez as it related to the taking of the Ford Expedition.

The jury found appellants guilty as charged on the remaining counts and found the remaining allegations to be true, including the gang allegations.

The trial court heard and denied appellants' motion for new trial.

Appellants were sentenced to state prison. Appellant Ramirez was sentenced to fifteen years to life on count 3 pursuant to section 186.22, subdivision (b). The court also imposed concurrent determinate terms on the remaining counts. On count 4, the court imposed the middle term of three years on the robbery, plus 10 years for the gang allegation. Then, in response to the prosecutor stating, "[g]un allegation also on count 4," the court added 10 years for the gun (section 12022.5, subdivision (b)), which was also concurrent.

## DISCUSSION

Appellants assert a number of different arguments in support of their appeals. We shall consider each argument separately.

A. *The Trial Court Did Not Err in Denying Jimenez's Untimely Request to Substitute Counsel*

Appellant Jimenez challenges his conviction because he was unable to have the attorney of his choosing, H. Russell Halpern, represent him at trial. That contention is without merit.

A criminal defendant's right to counsel reflects not only his choice of a particular attorney, but also his decision to discharge an attorney that he no longer wishes to retain. (*People v. Ortiz* (1990) 51 Cal.3d 975, 983.) That right, however, is not absolute. (*Ibid.*) "The trial court, in its discretion, may deny such a motion if such discharge will result in 'significant prejudice' to the defendant [citation], or if it is not timely, i.e., if it will result in 'disruption of the orderly processes of justice' " unreasonable under the circumstances of a particular case. (*Ibid.*) The opportunity to select counsel of one's own choice is necessarily limited by the countervailing state

5

interest in proceeding with prosecutions in an orderly and expeditious way. (*Id.* at pp. 983-984.)

A trial court generally has discretion to grant a continuance to allow new counsel to substitute in and to prepare, but such a continuance may be denied if the accused is " 'unjustifiably dilatory' " in obtaining counsel, or if he arbitrarily chooses to substitute counsel at the time of trial. (*People v. Courts* (1985) 37 Cal.3d 784, 790-791.) On appeal, the burden is on the defendant to establish an abuse of discretion in the denial of a request for a continuance, and in the absence of such a showing, a reviewing court will not disturb the ruling of the trial judge. (*People v. Jeffers* (1987) 188 Cal.App.3d 840, 849-850.)

In this case, the appellants had been awaiting trial for over eight months. Appellant Jimenez expressed to the court that he wanted to go to trial within the statutory period. On May 16, 2013, defense counsel (including Ramirez's attorney, Mr. Bazadier) appeared for the scheduled trial and announced ready. Attorney Halpern then entered the court and appellant Jimenez requested new counsel. The court observed that the trial was set for this day, as 28 of 30, that all parties and counsel had announced ready, and then asked if Attorney Halpern wished to be heard. Attorney Halpern informed the court that he'd been retained five days ago and had spoken with Mr. Bazadier, but stated that he needed more time. Halpern wished to interview Peter Cole, to retain an expert and to view store video that he believed would establish that his client was elsewhere at the time of the robberies. The Court ruled that the motion to relieve and substitute counsel was untimely and was, therefore, denied. The case was sent forthwith to Department F for trial.

The court did not abuse its discretion in denying the motion to substitute counsel as untimely. The motion was not set or heard until the day set for trial. At no time prior to the scheduled trial date had Jimenez or his attorney mentioned the possibility of a request to substitute counsel. When he appeared on the scheduled trial date, Attorney Halpern provided no assurance or timetable to the court as to when he would be able to defend Jimenez at trial. All counsel and Jimenez's two co-defendants had announced

6

ready for trial.  Victims and witnesses had been subpoenaed and would have been inconvenienced by further postponements of trial.  Given the open-ended nature of the delay that would have been occasioned by the substitution of counsel, the court did not err in concluding that this motion -- if granted -- would have disrupted the orderly process of justice and was unreasonable in this case.  Nor did Jimenez exercise reasonable diligence in retaining new counsel.  During the months of pretrial preparation, Jimenez never suggested that he wished to substitute counsel.  Rather, he waited until the day set for trial to do so.  (See *People v. Blake* (1980) 105 Cal.App.3d 619, 623-624.)  Under these circumstances, the court did not abuse its discretion.

B.      *The Trial Court Did Not Err In Denying Appellants' Motion to Bifurcate*

Appellant Jimenez asserts that the trial court violated the Due Process Clause and the Fourteenth Amendment when it denied the defense motion to bifurcate the gang allegations from the substantive counts.  We disagree.

A trial court has wide discretion to bifurcate trial of a gang enhancement violation from trial on the underlying charges.  (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1048.)  Evidence of a defendant's gang affiliation is often relevant to and admissible regarding a number of issues pertinent to guilt of the charged offenses, including identity, specific intent, and motive.  (*Id.* at p. 1049.)

In this case, the identification of the defendants as the perpetrators of these crimes was a principal defense.  The evidence relevant to the gang allegations was necessarily relevant to the question of whether these defendants committed the charged crimes together.  For example, finding one of the cellular telephones left behind by appellant Jimenez with "Lokos" scratched on the back connected defendants to the robbery of Harris.  And, appellant Guerrero's bedroom (where he and Ramirez were ultimately apprehended) had "Lokos" writing in it, and the RAV4 -- used in the robbery of Silva -- was covered with LOKOS symbols when the police recovered it.  The different roles played by the appellants during these various crimes would be the subject of an expert opinion as to how gang members work cooperatively in the commission of crimes.

7

In addition, the trial judge indicated that during *voir dire*, he would instruct potential jurors that the appellants could not be found guilty based on guilt of association and each of them was entitled to an individual determination of his guilt on each of the charges. Finally, the trial judge conducted a weighing under Evidence Code section 352 and found that a bifurcated proceeding would necessitate an undue consumption of time.

The facts presented in this case are clearly distinguishable from those in *People v. Cardenas* (1982) 31 Cal.3d 897, the case on which appellant Jimenez relies. In that case, the court noted that the "probative value of the gang membership evidence was minimal at best" and cumulative. (*Id.* at p. 904-905.) The prosecution sought to prove that the witnesses and appellant lived in the same neighborhood and had the same circle of friends. These facts, however, had been amply established before the prosecutor began his inquiries into the witnesses' gang affiliations. In addition, the undue prejudice of this testimony was exacerbated by the prosecutor's line of questioning which left the "impression" that the attempted robbery was a gang operation -- a use far beyond the stated purpose of impeaching witness credibility. (*Ibid.*)

As the trial court properly concluded that the probative value of the gang evidence was not substantially outweighed by the probability that its admission would create a substantial danger of undue prejudice, it acted well within its discretion in denying bifurcation.

C.    *The Trial Judge Properly Admitted the Telephone Conversation Between Appellant Guerrero and His Girlfriend*

Appellant Jimenez challenges the trial court's decision to allow the telephone call between co-defendant Guerrero and his girlfriend to be admitted at trial. Jimenez argues that the introduction of the portion of that conversation where Guerrero states, "the only reason they caught us is 'cause Peter' " violated his Sixth Amendment right of confrontation and cross-examination. This argument is without merit. The trial court's admission of this recording was proper and is affirmed.

The *Aranda/Bruton* rule upon which appellant Jimenez relies applies when an out of court statement of a non-testifying defendant implicates another defendant. The admission of a statement implicating a co-defendant presumptively violates the codefendant's Sixth Amendment right to confrontation. (*People v. Aranda* (1965) 63 Cal.2d 518; *Bruton v. United States* (1968) 391 U.S. 123.) Critical to this analysis is whether, in the facts of a given case, the statement operates to inculpate the other defendant. (*People v. Anderson* (1987) 43 Cal.3d 1104, 1113.)

Under the facts of this case, Guerrero's statement and use of the word "us" cannot be fairly characterized as implicating appellant Jimenez. The only person other than Guerrero himself who was incriminated by the statement "the only reason they caught us is 'cause Peter' " was Peter -- presumably Peter Cole. Appellant Jimenez was apprehended by the police separately from Guerrero and Peter and thus could not have been incriminated or even implicated by this statement.

Furthermore, even if the statement could be understood as referring to appellant Jimenez, there was no *Aranda/Bruton* violation. This doctrine does not stand for the proposition "that all statements of one defendant that implicate another may not be introduced against all defendants in a joint trial." (*People v. Cervantes* (2004) 118 Cal.App.4th 162, 176.) Non-testimonial declarations against penal interest, even if portions of the statement implicate a non-testifying defendant, may be properly admitted where the statement is not "exculpatory, self-serving, or collateral." (*People v. Samuels* (2005) 36 Cal.4th 96, 120-121.) In this case, the telephone conversation between Guerrero and his girlfriend was not testimonial within the meaning of *Crawford*. No reasonable person would anticipate that this statement would be used at trial. In addition, the trial court properly determined Guerrero's statement was admissible as a declaration against penal interest under Evidence Code section 1230. This statement tended to confirm Guerrero's participation in the charged crimes and he was unavailable because he exercised his privilege not to testify at trial. Accordingly, the requirements for the admission of this statement were met.

9

Looking at the totality of the circumstances -- including the fact that the conversation took place between friends in a non-coercive setting that fosters uninhibited disclosures -- the court considered and concluded that a person in Guerrero's position would not have made the statement unless he believed it to be true. Thus, the statement was trustworthy and reliable. Guerrero's challenged statement was properly admitted as a declaration against interest and did not inculpate appellant Jimenez.

D. *The Evidence Was Sufficient to Support the "Primary Activities" Element of the Gang Allegation*

Appellants Ramirez and Guerrero challenge the sufficiency of the evidence to support the "primary activities element" of the gang allegation.[2] Both appellants contend that the evidence was insufficient to prove that one of the Lokos Trece gang's primary activities was the commission of one or more of the criminal acts enumerated in section 186.22, subdivisions (e)(1) to (e)(25), or (e)(31) to (e)(33). We reject this argument.

The test for determining a claim of insufficient evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Jones* (1990) 51 Cal.3d 294, 314.) In making that determination, the appellate court must view the evidence in the light most favorable to the People and must presume in support of the judgment the very existence of every fact the trier of fact could reasonably deduce from the evidence. (*Ibid.*)

In relevant part, section 186.22 subdivision (b)(1) provides for an enhanced punishment for "any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members . . . . " Section 186.22, subdivision (f) defines a criminal street gang as "any ongoing

---

[2]     Appellants Guerrero and Ramirez also joined in the arguments of their co-appellants to the extent that they were applicable. (Cal. Rules of Court, § 8.200(a)(4)).

organization, association, or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more of the criminal acts enumerated in paragraphs (1) to (25), inclusive, or (31) to (33), inclusive, of subdivision (e), having a common name or common identifying sign or symbol, and whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity."

Accordingly, to trigger the enhancement, the trier of fact must find that one of the alleged criminal street gang's primary activities is the commission of one or more of certain crimes listed in the gang statute. (*People v. Sengpadychith* (2001) 26 Cal.4th 316, 323.) Sufficient proof of the gang's primary activities can consist of expert testimony. (*Id.* at p. 324.) An expert's testimony based on conversations with other members of the gang and the defendants, his investigation of other crimes committed by the gang members, and information obtained from his colleagues and other law enforcement agencies is legally sufficient to prove that the gang had as one of its primary activities the commission of one or more of the enumerated offenses. (See *People v. Gardeley* (1996) 14 Cal.4th 605, 620.)

In this case, Detective Boisvert testified as a gang expert. Despite appellant's challenge to his credentials, Detective Boisvert had extensive experience with gangs generally and the Lokos Trece Gang specifically. Detective Boisvert worked extensively among and with Hispanic gang members during the five years he spent in his first assignment in a jail. Detective Boisvert's knowledge of gangs generally and Lokos Trece specifically deepened during his years as a patrol officer in the Century station. He began that assignment in 2006 and his station was located in the area that includes the territory claimed by the Compton Varrio Lokos Trece gang. During this period, Boisvert handled hundreds of investigations in the area claimed by the Lokos Trece gang. In 2010, Boisvert was promoted to a station level detective in Century Station and, about a year later, was promoted to a detective with Operation Safe Streets, the gang unit within the Los Angeles County Sheriff's Department. In addition to on the job training, Detective Boisvert attended many training courses about gangs.

11

Based on his experience and expertise, Detective Boisvert testified that the primary activities of the Lokos Trece gang included a number of enumerated offenses, including without limitation burglaries, robberies, stolen vehicles, shootings, assaults, carjacking, homicides, possession of firearms by a felon, and narcotics sales.[3] He based that opinion on interactions with gang members, investigations of crimes committed by the gang's members, his training and experience, and information obtained from other colleagues and law enforcement agencies. On cross-examination, the detective added vandalism along with other crimes as the primary activities of Lokos Trece.

Viewing the evidence in the requisite light, a rational jury could find beyond a reasonable doubt that one of the primary activities of the Lokos Street gang was the commission of one or more of the enumerated criminal acts enumerated in section 186.22, subdivision (e). The expert's testimony regarding the gang's primary activities was not, as appellants contend, based solely on the predicate offenses. Nor, as appellants seem to imply, did the gang expert need to amass scientific data on the activities of all 140 members before providing a basis upon which the jury could rely to conclude that one of the primary activities of the Lokos Trece was the commission of one or more of the enumerated crimes in section 186.22, subdivision (e)(1) through (e)(25) or (e)(31) to (e)( 33).

---

[3] Corroborating Detective Boisvert's opinion that Lokos Trece engaged in enumerated crimes as its primary activities was additional evidence of past offenses. (See *People v. Duran* (2002) 97 Cal.App.4th 1448, 1465.) The evidence adduced at trial showed that a Lokos Trece gang member was convicted in 2008 of murder and shooting at an occupied motor vehicle, and gang allegations were found to be true. In 2010 and 2011, two other Lokos Trece gang members were convicted of being a felon in possession of a firearm. In 2012, another Lokos Trece gang member pled no contest to and was convicted of the enumerated offense of burglary and he admitted the truth of the gang allegation.

E.      *Appellants Have Forfeited Their Challenge to the Trial Court's Instruction on "Primary Activity" Element of the Gang Enhancement by Failing to Object at Trial*

Appellants Ramirez and Guerrero contend, for the first time on appeal, that the trial court committed prejudicial error by instructing on an erroneous potential primary activity of vandalism.[4]  Appellants complain that the trial judge failed to distinguish between felony vandalism (which is an enumerated criminal activity) and misdemeanor vandalism, which is not.

Appellants failed to lodge an objection to the use of the CALCRIM No. 1401 instruction (as modified in the light of the facts of the particular case) given by the trial judge.  Although counsel and court met to discuss and finalize the jury instructions, there is a complete absence of any objection by any defendant as to the unspecified nature of "vandalism" in this instruction.  If defendants found the failure to designate vandalism as "felony vandalism" problematic, they had an obligation to request clarifying language.  (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1133-1134.)  Their failure to do so bars appellate review of this issue.  (*Ibid.*)

Further, even if not barred, any error claimed in this instruction was harmless beyond a reasonable doubt.  (*Sengpadychith*, *supra*, 26 Cal.4th at p. 327) (a trial court's failure to instruct on an element of a gang enhancement is subject to review under the *Chapman* standard.)

In this case, the record shows that any error as alleged by appellants was harmless beyond a reasonable doubt.  In addressing the primary activities element of the gang enhancement allegations in his closing arguments, the prosecutor pointed not to vandalism, but to other crimes enumerated in section 186.22, subdivisions (e)(1) to (e)(25) and (e)(31) to (e)(33), as to the gang's primary activities.  More importantly, on the record in this case, it is inconceivable that the jury somehow found that one of the

---

[4]      The court instructed on primary activities as follows:  "A criminal street gang is any ongoing organization . . . .  [2] That has, as one or more of its primary activities, the commission of ex-felon in possession of a firearm, burglaries, carjacking, robbery, auto theft, vandalism, witness intimidation, drug sales, homicide . . . ."

13

primary activities of the Lokos Trece gang was the commission of misdemeanor vandalism, but that the gang's primary activities did not also include the commission of one or more of the other crimes enumerated in section 186.22, subdivisions (e)(1) to (e)(25) and (e)(31) to (e)(33). Although Detective Boisvert testified that the gang's primary activities included vandalism, he also testified that the gang's primary activities included the commission of a number of other enumerated crimes, including without limitation, burglaries, robberies, vehicle thefts, carjacking, witness intimidation, possession of a firearm by a felon, and narcotics sales. These offenses tracked with the prior convictions of four other Lokos Trece gang members. Any error in the trial court's inclusion of unspecified "vandalism" in its enumerated examples of potential primary activities was harmless beyond a reasonable doubt.

F.     *The Trial Court Did Not Err in Allowing the Prosecutor to Restate the Hypothetical to the Gang Expert*

Appellant Jimenez contends that the trial judge impermissibly allowed the prosecutor to re-state a hypothetical question to the gang expert and allowing that testimony violated Evidence Code section 352. We find no merit to this argument.

The prosecutor first asked the expert a hypothetical question to elicit an opinion as to whether the crimes here were done for the benefit of, or at the direction of, or in association with a gang. That hypothetical included the names of the victims, the color and make of the cars used, a physical description of the suspects and the names of the appellants and their addresses. Following defense objections, the trial judge overruled the objections, but invited counsel to be heard at sidebar. After considering the matter further, the court asked the prosecutor to amend the hypothetical to use the term "a known gang member of Lokos Trece" instead of naming the appellants in the hypothetical. In addition, the court admonished the jury that the fact that names were used in a hypothetical question is not substantive evidence that any of the appellants committed any of the charged crimes.

The next day, however, the prosecutor brought to the court's attention that case law precluded the use of names in hypothetical questions and that it could be error to do

so. After a discussion of the parties' varied positions and objections by appellant Jimenez, the trial court told the jury:

> "Ladies and Gentlemen, last Friday, if you remember, we took a break. And then I came back out and I gave you an admonition to disregard any testimony by the detective wherein formal proper names of the defendants were used in a hypothetical. I am now going to strike that testimony in its entirety, and the record will be void of that. It's like it never happened. It did not happen. It's gone.

> "And, I am going to admonish you again to disregard all of that. Those will be stricken from the record. And what we're going to do now is I'm going to let the District Attorney re-ask those hypotheticals without the use of proper names. It will say if a gang member, if a known gang member, does A, B, C. It shouldn't take too long. So that's stricken."

The prosecutor then posed a hypothetical question based on the evidence presented without naming appellants and instead used the term "known gang members."

Appellant Jimenez objects that the trial court's decision to allow the prosecutor to re-state a hypothetical question posed to the gang expert was unduly prejudicial under Evidence Code section 352. We find this contention without merit.

The trial court's decision to allow the prosecutor to re-state the hypothetical reduced any possibility that the jury would confuse the question as substantive proof of the identification of these defendants as having committed these crimes. The judge's instruction to the jury -- both by way of his admonition to disregard the improper hypothetical and his closing instruction using CALCRIM No. 332 -- clearly told them that they were to decide whether a fact assumed in the hypothetical has been proved. On appeal, jurors are presumed to have comprehended, accepted and followed the court's instructions. (*People v. Wash* (1993) 6 Cal.4th 215, 263.) Given the court's instructions, no rational juror could possibly have considered the court's decision to allow a re-statement of this hypothetical in more neutral terms to be "vouching" for Detective Boisvert's testimony.

15

G.      *The Trial Court Did Not Err in Denying Appellant Jimenez's Motion for New Trial*

Appellant Jimenez asserts that the trial court committed error in not granting his motion for a new trial.  This contention is without merit.

Several months passed between when the verdicts were returned and when this "motion" was heard and decided.  The jury returned its verdicts and findings on June 11, 2013.  The trial court set the hearing on motions for a new trial and sentencing for July 24, 2013.  Attorney Halpern's motion to substitute in as appellant Jimenez's counsel of record was granted on July 12, 2013.  The hearing was continued from July to September 17, to October 3 and then to November 26, 2013.  At the request of Attorney Halpern (and over the objection of appellant Ramirez's attorney), the hearing was further continued until January 23, 2014 -- as the last continuance.

On January 23, 2014, the trial court inquired about appellant Jimenez's motion.  Counsel for Jimenez indicated that he had ascertained that the woman whose photograph was used at trial (presumably stored in the cellular telephone with Lokos scratched on the case) was not Jimenez's mother.  He also indicated that he'd located the person whose phone number was allegedly "registered to the address on Pear Street."  Although she had been subpoenaed and ordered back by the court, she was not present at the hearing.  Jimenez's counsel proffered that had she appeared, she would testify that she did not live at the Pear Street address where Jimenez resided at the time that the crimes were committed.

Jimenez's counsel argued that the proffered evidence went to whether he was, in fact, the person who committed all three counts on which Jimenez was convicted.  Because the telephone number and picture were used to further link  Jimenez to the Explorer, this evidence would reduce its value as corroborative of the eyewitness identification of appellant Jimenez.

The prosecutor rebutted this argument by noting that both victim Harris and witness Varela positively identified Jimenez and Varela saw him running toward Pear Street, where he lived.  Harris was very close to appellant Jimenez when she was

16

robbed.  The prosecutor also argued that Jimenez's testimony at trial was not credible and that the evidence (even without the cell phone picture and telephone number) still overwhelmingly proved Jimenez's guilt.

The Court, based on having observed the whole trial and all of the evidence, agreed with the prosecutor and denied the motion for a new trial.  The trial court found that a result more favorable to Jimenez would not have occurred if a jury heard different testimony about the cellular phone.

On review, a trial court's discretion in ruling on a motion for new trial is particularly broad.  " 'The determination of a motion for a new trial rests so completely within the court's discretion that its action will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears.' " (*People v. Delgado* (1993) 5 Cal.4th 312, 328.)  There is no manifest and unmistakable abuse in this case.

Even if fully credited, the evidence proffered at the hearing on Jimenez's motion for new trial would not have rendered a different result probable on retrial.[5]  Two eyewitnesses positively identified Jimenez.  Both women had good views and Harris was within inches of his face.  Varela also saw Jimenez abandon the red Ford Expedition, which was later found to contain Harris' property, and run toward his residence on Pear Street.  Located by the police about half-way between the Expedition and his residence was a St. Louis Cardinals baseball cap, which further connected Jimenez to the crimes.

### H.    *The Trial Court Erred in Imposing a Personal Use of Firearm Enhancement in Sentencing Appellant Ramirez on Count 4*

At the conclusion of the prosecution case, the court granted appellant Ramirez's section 1118.1 motion for judgment of acquittal with regard to the personal use of a firearm allegation on count 4 -- second degree robbery of Jessica Martinez.  Having granted this motion, the jury made no finding as to this allegation.  Nevertheless, at sentencing, the court imposed a 10-year personal use of a firearm enhancement pursuant

---

[5]    The trial court employed an objective standard in determining whether the newly discovered evidence would cause a different result for Jimenez.

17

to section 12022.53, subdivision (b). As acknowledged by respondent, this is an error. The ten year sentence for the personal-use-of-a-firearm imposed on count 4 must be stricken and the abstract of judgment amended accordingly.

I.   *The Trial Court Erred in Imposing a Personal Use of Firearm Enhancement in Sentencing Appellant Guerrero on Count 4*

Appellant Guerrero requests that his abstract of judgment be amended to correctly state his sentence. Guerrero was sentenced to seventeen years, four months on count 4; *consecutive* to a four year and four month sentence on count 7 plus a three year, four month enhancement. The abstract of judgment, however, shows that the principal term on count 4 was imposed concurrently. The abstract of judgment for appellant Guerrero is incorrect. The appellate court can order that an abstract of judgment be corrected to reflect the sentenced imposed by the trial court. (*People v. Mitchell* (2001) 26 Cal.4th 181, 183.) Accordingly, the abstract of judgment should be corrected to delete the indication that the principal term imposed on Count 4 was imposed concurrently.

## *DISPOSITION*

The personal use of a firearm enhancement imposed pursuant to section 12022.53, subdivision (b) against appellant Ramirez on count 4 should be stricken and the abstract of judgment amended accordingly. The abstract of judgment concerning appellant Guerrero should be corrected to delete the indication that the principal term on count 4 was imposed concurrently. In all other respects, the judgments and sentences are affirmed.

## *NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS*

JONES, J.*

WE CONCUR:

EDMON, J.

KITCHING, J.

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.