Filed 4/19/21  P. v. Torres CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE, | 2d Crim. No. B298408 |
| Plaintiff and Respondent, | (Super. Ct. No. 1496645) (Santa Barbara County) |
| v. |  |
| MATTHEW ROBERT TORRES, |  |
| Defendant and Appellant. |  |

Matthew Robert Torres appeals a judgment following his conviction of first degree residential burglary (Pen. Code,[1] § 459), a felony, with a finding that another person was present during the crime (§ 667.5, subd. (c)(21) (count 1); forcible lewd act upon a child under the age of 14 (§ 288, subd. (b)(1)), a felony, with a finding he committed the offense during the commission of a first degree burglary (§ 667.61, subds. (b), (e)(2), (j)(1) & (2)), with the intent to commit one of the crimes charged in counts 2–5 (*id.*,

_____

[1] All statutory references are to the Penal Code.

subds. (d)(4), (j)(1) & (2)), and committed the offense against more than one victim (*id.*, subds. (b), (c)(4), (7) or (8), (e)(4)) (count 2); lewd act upon a child under the age of 14 (§ 288, subd. (a)), a felony, with a finding he committed the crime during the commission of first degree burglary (§ 667.61, subds. (b), (e)(2), (j)(1) & (2)), with the intent to commit one of the crimes charged in counts 2–5 (§ 667.61, subds. (d)(4), (j)(1) & (2)), and committed the offense against more than one victim (*id.*, subds. (b), (c)(4), (7) or (8), (e)(4)) (counts 3 and 4); oral copulation of a child under the age of 14 (§ 288, subd. (c)(1)), a felony, with a finding that he committed the offense during the commission of first degree burglary, with the intent to commit one of the crimes charged in counts 2–5, and committed the offense against more than one victim (count 5); oral copulation of a child under the age of 14 (§ 288, subd. (c)(1)) (count 6).

The trial court sentenced Torres to an aggregate sentence of life without the possibility of parole plus 50 years to life.

We conclude, among other things, that 1) the trial court correctly found Torres was competent to stand trial; 2) it properly denied his *Marsden* motions (*People v. Marsden* (1970) 2 Cal.3d 118); 3) it did not err by denying Torres's *Faretta* motion (*Faretta v. California* (1975) 422 U.S. 806 [45 L.Ed.2d 562]) to represent himself; but 4) in sentencing, the court did not properly determine the fine it imposed under section 290.3. The court also found the sentence it imposed was "so long and so harsh" that "it's somewhat absurd," but it felt it was required to impose it by statute and only an appellate court could reduce the punishment. The court, however, did not consider its own authority to determine whether the sentence it was imposing violated the constitutional ban on cruel or unusual punishment as applied to

2

this defendant.  We remand for resentencing.  In all other respects, we affirm.

## FACTS

In the summer of 2016, J.H. and his wife and two young daughters, Jane Doe 1 and Jane Doe 2, took a trip to Santa Barbara and rented an apartment.  As part of their trip, the family visited Santa Barbara and rented an apartment.

Jane Doe 1 and Jane Doe 2 were sleeping in their bedroom.  Jane Doe 1 testified at night Torres, a stranger, came through a side door into their bedroom and got into bed with her and her sister.  It was dark and Jane Doe 1 thought Torres was her father.  She felt "something moist in-between" her legs.  Torres was licking her private area between her legs.  He then forced her head down toward his penis.  Her head "didn't touch anything because [she] was pushing back."  Torres grabbed her arm.  He was pulling her.  She resisted and pulled her arm back.  She was only six years old at that time and did not understand what was happening.

Jane Doe 2 testified that on July 22, 2016, she was five years old.  Torres entered her bed and "licked between [her] legs."  He also licked her buttocks.

J.H. woke up to "the sound of [his] daughters' voices."  He felt "a wiggle" on his foot.  It "felt wet."  J.H. "sat up in bed" and saw Torres in his room.  J.H. got up, turned on the light, and asked Torres who he was.  Torres responded that his name was Matthew.  J.H. forced him out, unlocked the front door, and pushed Torres out of the apartment.  He then called 911.

Doctor Margot Roseman testified that she conducted a sexual assault examination of Jane Doe 1 and Jane Doe 2.  She used a swab to collect DNA evidence.  She swabbed the girls'

vagina and buttocks areas, and placed the swabs in a container to be sent to the Department of Justice laboratory.

Doctor Samantha Skotarczyk testified the laboratory received the samples obtained by Doctor Roseman. It also received Torres's "buccal swab." Jane Doe 1's "vulva swab" and "mons pubis swab" contained DNA evidence consistent with Torres's DNA. Jane Doe 2's "buttocks swab" contained DNA "consistent with the profile for Matthew Torres."

In the defense case, Dr. Layth Hakim, a psychiatrist, testified he prescribed Zyprexa for Torres because he has a delusional disorder. Zyprexa may be used to treat "psychosis." Torres was on Zyprexa for some period and the side effects can include "some dizziness." Torres is not malingering or manufacturing symptoms. One medical report shows "there's an indication of psychosis," which is "indicative of a psychotic disorder." There was also a finding of "thought blocking," which is "typically seen in people [with] schizophrenia or schizoaffective disorder."

Torres testified that he was admitted to the emergency room at Cottage Hospital. The doctors administered drugs. He lost "consciousness." He was released from the hospital on July 22. He did not recall leaving the hospital. He drank an alcoholic beverage and felt "very sick." He went to a bar and someone placed drugs in his drink. He lost consciousness and blacked out. He testified, "I cannot remember anything." He next remembered police officers placing him under arrest.

In rebuttal, Doctor Steven Mills of Cottage Hospital testified he treated Torres after he was brought into the hospital on July 24, at 1:38 a.m., by the police. Torres had no "acute medical issues of concern." There was a "smell of alcohol." He

4

was able to walk and he had a "steady gait."  His speech "was normal."  His memory "was normal."  There were "[n]o focal motor deficits and no focal sensory deficits."  Had Torres had any "delusions or indications of psychiatric illness," Mills would have noted that in his report.

The trial court instructed the jury that the People had to prove Torres committed the acts with "wrongful intent."  The jury could consider the evidence concerning Torres's mental disease in deciding whether he acted with the requisite criminal intent for certain offenses, and that he could not be found guilty if he committed the acts "while unconscious" as a result of being "involuntarily intoxicated."  Torres's counsel told the jury that Torres was in a "mentally out of it state."  He said Torres had a "[d]elusional disorder," "[s]chizophrenia," and "[c]learly [had] mental health issues going on."  The jury found Torres guilty.

*Motions and Hearings*

The trial court was informed before trial that Torres had mental health issues.  It held competency hearings.  The court ordered Torres to be evaluated by doctors.  After receiving medical evidence, it ultimately ruled Torres was competent to stand trial.

Torres filed *Marsden* motions claiming his counsel was not properly representing him.  The trial court held hearings on these motions and denied them.

Torres filed a *Faretta* motion to represent himself at trial.  The court denied the motion ruling that, although Torres was competent to stand trial, he was not competent to represent himself at trial.

After the jury verdicts, Torres filed a motion for new trial.  The trial court denied the motion.

At the sentencing hearing, the trial court imposed an aggregate sentence of life without the possibility of parole plus 50 years to life. Torres's counsel claimed the sentence was "cruel and unusual punishment" because Torres was a "sick" person.

DISCUSSION

*Was Torres Competent to Stand Trial?*

Torres contends the trial court erred by finding he was competent to stand trial.

"[T]he conviction of an accused when he is legally incompetent violates due process." (*People v. Medina* (1990) 51 Cal.3d 870, 881.) "[A] competency hearing is required whenever substantial evidence of the accused's incompetence has been introduced." (*Id.* at p. 882.)

"A defendant is mentally incompetent . . . if, as a result of a mental health disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner." (§ 1367, subd. (a).) "It shall be presumed that the defendant is mentally competent unless it is proved by a preponderance of the evidence that the defendant is mentally incompetent." (§ 1369, subd. (f).)

"When . . . a competency hearing has already been held and the defendant was found to be competent to stand trial, a trial court is not required to conduct a second competency hearing unless 'it "is presented with a substantial change of circumstances or with new evidence" ' that gives rise to a 'serious doubt' about the validity of the competency finding." (*People v. Marshall* (1997) 15 Cal.4th 1, 33.) "More is required than just bizarre actions or statements by the defendant to raise a doubt of competency." (*Ibid.*) "[A] reviewing court generally gives great

6

deference to a trial court's decision whether to hold a competency hearing." (*Ibid*.) " ' "An appellate court is in no position to appraise a defendant's conduct in the trial court as indicating insanity, a calculated attempt to feign insanity and delay the proceedings, or sheer temper." ' " (*Ibid*.)

In reviewing the sufficiency of the evidence, we draw all reasonable inferences from the record in support of the trial court's factual findings. We do not decide the credibility of the witnesses. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.) Torres cites to evidence in the record that he claims supports his position. But the issue is not whether some evidence supports appellant, it is whether substantial evidence supports the court's fact findings.

Torres contends the trial court erred because the record shows he was not competent to stand trial.

The People respond that there were multiple competency proceedings and each of the trial court's rulings was supported by the evidence. We agree.

*The March 2017 Competency Proceedings*

At this pre-trial proceeding, the trial court was aware of Torres's mental health issues. It initially received evidence in the March 2017 trial court proceedings concerning Torres's competency to stand trial. In a report by James A. Tahmisian, Ph.D., Tahmisian determined that 1) Torres understood the charges against him; 2) Torres had the ability to cooperate with his attorney; 3) Torres had the present ability to consult with his lawyer; 4) there are "no indicators that [Torres] lacks rational as well as factual understanding of the proceedings against him"; and 5) Torres "is competent to stand trial." (Boldface omitted.)

Torres notes that Katherine J. Emerick, Ph.D., concluded that he was not competent to stand trial, but the trial court found "Dr. Tahmisian's report was better reasoned." Tahmisian spent more time interviewing Torres than Emerick, and his report contained more detailed findings. The trial court initially decides the weight and credibility of the evidence. The court could reasonably find that there was a conflict in Emerick's report which raised questions about the report's conclusions and findings. One part of her report concluded Torres did not have the ability to understand the proceedings, but another part found he "understands the charges against him." The finding that he understands the charges against him is consistent with Tahmisian's conclusions. Emerick also found Torres "understood the roles of the various Court officers."

Torres has not shown the trial court erred in finding him competent to stand trial. The court's finding is supported by the medical evidence presented by Dr. Tahmisian. (*People v. Blacksher* (2011) 52 Cal.4th 769, 798 [trial court's reliance on single medical report to find defendant competent to stand trial was not error]; *People v. Williams* (2015) 242 Cal.App.4th 861, 872; *People v. Achrem* (2013) 213 Cal.App.4th 153, 159; *People v. Zapisek* (2007) 147 Cal.App.4th 1151, 1165; *People v. Bowers* (2006) 145 Cal.App.4th 870, 879.)

*The December 7, 2017, Competency Hearing*

At a December 7 pre-trial hearing, Torres's counsel again raised an issue about Torres's competency to stand trial. He argued that Torres was not able to rationally cooperate with him in presenting a defense.

The trial court suspended the proceedings and appointed doctors to examine Torres. The court subsequently received

medical reports from two doctors which confirmed counsel's claims. The court found, "[B]oth doctors find that Mr. Torres requires the administration of psychotropic medication in order to regain competency." It suspended the proceedings and ordered the "community program director or his designee" to evaluate Torres and file a report with the court. It later ordered Torres transferred to a state hospital and stated, "Criminal proceedings remain suspended until Mr. Torres has regained his competency to stand trial."

The trial court's decision to temporarily suspend proceedings until Torres's competency could be determined and potentially restored, instead of making a *final ruling* that he was incompetent to be tried, was not an abuse of discretion. Dr. Murphy, one of the appointed doctors, concluded Torres was currently not competent to stand trial, but "medication *is likely* to render the defendant competent to stand trial." The court properly relied on medical evidence that supported the view that his current temporary incompetency could be successfully treated and he could potentially be restored to competency after treatment.

*The August and September 2018 Competency Proceedings*

The trial court subsequently received a report from Dr. Fennell, the medical director of Atascadero State Hospital, in August certifying that Torres was now competent. The court found: 1) this was a "certification of mental competency pursuant to [section] 1372"; and 2) the "medical staff" of the hospital "believes that Mr. Torres is now competent to stand trial."

At a competency hearing after the filing of a certification of mental competence under section 1372, the party claiming the

9

defendant is not competent to stand trial has the burden of proof on that issue. (*People v. Rells* (2000) 22 Cal.4th 860, 862.)

Torres's counsel requested a hearing to show that Torres was not competent to stand trial. Torres testified that he understood that he was being charged with very serious offenses. He knew that he could be facing a life sentence. He was competent to stand trial. Torres said competency to stand trial means, "I understand my criminal charges. And the courtroom proceedings." He understood the judge's role, the role of the lawyers and defense counsel. He knew the role of the prosecutor is to "present the charges to the court." Torres said he knew there was video evidence that would be introduced at trial. He described what he wanted as a defense strategy. Torres testified he was willing to try to work with his counsel. He was willing to allow counsel to see his medical records.

The trial court found Torres was competent to stand trial. Torres has not shown this finding was not supported by the evidence. The court had the medical certification of his competency. It noted the medical staff at the hospital determined Torres was competent to stand trial, and it was in the best position to observe his demeanor and determine the credibility of his testimony. (*People v. Marshall*, *supra*, 15 Cal.4th at p. 33; *People v. Bowers*, *supra*, 145 Cal.App.4th at p. 879.) Torres understood the charges, the potential punishment, the role of the court and counsel, and he indicated his willingness to work with his counsel. In observing Torres as he testified, the court said, "[Y]ou sound competent." (*People v. Blacksher*, *supra*, 52 Cal.4th at p. 798.)

10

*The January 11, 2019, Competency Proceedings*

Torres's counsel again raised a "doubt" about Torres's competency. Counsel said there was a defense of not guilty by reason of insanity, but Torres would not consider it. Torres was not taking his medications.

The trial court declared a "doubt," suspended the proceedings, and appointed doctors to evaluate Torres. The parties agreed to submit the issue on the January 25, 2019, evaluation of Torres conducted by Dr. Tahmisian.

Tahmisian determined that Torres 1) "has a complete understanding of the charges filed and courtroom personnel and proceedings"; 2) has "sufficient present ability to consult with his attorney with a reasonable degree of rational understanding"; and 3) is "competent to proceed to trial at this time."

The trial court found Torres was competent to stand trial and it reinstated criminal proceedings. Torres has not shown error. The finding of competence was supported Tahmisian's medical evidence. (*People v. Blacksher*, *supra*, 52 Cal.4th at p. 798; *People v. Achrem*, *supra*, 213 Cal.App.4th at p. 159.)

*The April 10, 2019, Incident*

Torres argues the April 10, 2019, incident shows he was not competent to stand trial.

During trial, the trial court received notice from the jail that Torres made statements about suicide and he was placed in "a safety cell." The court temporarily suspended trial proceedings. It had mental health staff evaluate Torres. Shortly thereafter, the staff determined that Torres was cleared to come to court.

The trial judge was familiar with Torres's conduct during trial. It found this was not a genuine mental health issue.

11

Instead, the "timing" of this event was "a deliberate attempt to kind of create some chaos and muck up the trial process." The court noted that on a prior occasion, after Torres received an unfavorable ruling from the court, he falsely "claimed he was faint." When questioned by the court, Torres admitted, "I'm not faint." Here the mental health staff had cleared Torres to come to trial this day. The trial court was in the best position to determine whether a defendant is attempting "to feign insanity" or trying to "delay the proceedings." (*People v. Marshall, supra*, 15 Cal.4th at p. 33.) Torres has not shown error or cited to any medical evidence to support his position. (*People v. Rogers* (2006) 39 Cal.4th 826, 848 [evidence of defendant's suicidal tendencies does not, by itself, constitute substantial evidence of incompetence unless it is accompanied by medical evidence to support the claim].)

*Torres's Disputes with His Counsel about Defenses*

Torres notes that his counsel told the trial court that he (Torres) had been prescribed "antipsychotic medications" and counsel wanted to present evidence at trial about his (Torres's) "mental" health conditions at the time of the offenses. Torres disagreed with that approach. He wanted counsel not to use his psychiatric records to show a mental disorder. Torres wanted his counsel to introduce evidence to show his mental state was impacted by Cottage Hospital's treatment before the offenses and "medications to help with withdrawals and to help with [his] platelet disorder."

Torres contends this should have raised a doubt about his competency to stand trial and triggered the trial court to hold another competency hearing. He claims his defense proposals were irrational. But "[m]ore is required than just bizarre actions

12

or statements by the defendant to raise a doubt of competency." (*People v. Marshall, supra*, 15 Cal.4th at p. 33.)

That an attorney and a client have a difference of opinion about the best defenses is not unusual. Nor does it automatically classify the defendant as being incompetent to stand trial. "An insistence upon innocence is not unknown among those accused of crime." (*People v. Blacksher, supra*, 52 Cal.4th at p. 798.) It is not a sign of insanity. It reflects "an ability to formulate a defense to the charges against [the defendant]." (*Ibid.*) A "defendant's refusal to present mitigating evidence," such as a mental illness insanity or incompetence defense suggested by his counsel, "is not by itself substantial evidence of incompetence requiring the trial court sua sponte to order a competency hearing." (*People v. Stanley* (1995) 10 Cal.4th 764, 806.) The defendant's personal belief that he is competent "is entitled to respect." (*Ibid.*)

Here the trial court did not consider Torres's defense theory and the theory proposed by his counsel to be mutually inconsistent. Nor did it consider Torres's theory to be absurd or a sign of a mental disorder. In fact, the court suggested Torres's defense theory could be supported by calling the Cottage Hospital doctor who administered the medication. Torres's proposed defense about intoxication-induced unconsciousness could produce evidence relevant to determine whether he had the requisite intent for committing some of the charged crimes, e.g., burglary. (*People v. Navarette* (2003) 30 Cal.4th 458, 503; *People v. Lewis* (2001) 25 Cal.4th 610, 650; *People v. Ervin* (2000) 22 Cal.4th 48, 91.) He also had the right to testify and "to give an exposition of his defense before a jury" even if it differed from his

13

counsel's preferred strategy. (*People v. Robles* (1970) 2 Cal.3d 205, 215.)

The trial court also properly allowed Torres's counsel to present the evidence he felt was necessary to support a defense based on mental illness. A defendant's attorney is required to " 'advocate the position counsel perceives to be in the client's best interests even when that interest conflicts with the client's stated position.' " (*People v. Stanley*, *supra*, 10 Cal.4th at p. 804.) As the People note, Torres did not want his medical records used by counsel. But the court found counsel could use the records to protect Torres's right to a fair trial. They could be used to show Torres suffered from a "mental illness," and as a result he could not form the criminal "intent" to commit crimes and was not "aware of what he was doing."

The trial court's approach properly "permitted the jury to hear every side of the issue of defendant's competence, thereby assuring defendant a fair trial." (*People v. Stanley*, *supra*, 10 Cal.4th at pp. 806-807.) It allowed jurors to decide whether Torres had a delusional mental disorder as shown by Dr. Hakim's testimony, or a temporary drug-induced mental blackout as shown by Torres's testimony, or both.

Moreover, Torres has not shown that the decision not to hold another competency hearing constituted error. The trial court had previously reviewed medical records showing that he was competent. It had a substantial opportunity to observe his behavior in court. "[A]bsent a showing of 'incompetence' that is 'substantial' as a matter of law, the trial judge's decision not to order a competency hearing is entitled to great deference, because the trial court is in the best position to observe the

14

defendant during trial." (*People v. Mai* (2013) 57 Cal.4th 986, 1033.)

*Torres's June 10, 2019, Post-Verdict Motion*

After the jury verdict and before sentencing, Torres filed a motion to enter a plea of not guilty by reason of insanity.

The trial court denied the motion. It found it was "too late" post-verdict to enter an insanity plea. It would be "undoing what the jury had done." The plea would have to be entered prior to trial.

The trial court did not err. "[A] motion to enter a plea of not guilty by reason of insanity is not timely when the motion is first made after the rendition of a jury verdict." (*People v. Hagerman* (1985) 164 Cal.App.3d 967, 977.)

Moreover, the trial court found the motion also was not meritorious. It said Torres "was attempting to manipulate the criminal justice system" by attempting to make an insanity plea at this late stage of the proceedings. The court had sufficient opportunity to view Torres's conduct during trial to be able to make this finding about the credibility of the filing of this motion at this time. (*People v. Marshall, supra*, 15 Cal.4th at p. 33.)

*Counsel's Request for a Post-Verdict Sanity Hearing*

Torres's counsel requested a post-verdict hearing on Torres's sanity. The trial court rejected that request.

Torres suggests the trial court erred by not holding another hearing on the insanity issue at that time. But Torres did not meet his burden to present "a substantial change of circumstances" or "new evidence" to support holding such a hearing. (*People v. Marshall, supra*, 15 Cal.4th at p. 33.)

In denying the request for another sanity hearing, the trial court made a series of factual findings based on its observation of

15

Torres at the various stages of the proceedings–pre-trial, during trial, and post-verdict. It said it did not see "anything to suggest he's not competent" 1) "prior to the course of the trial," 2) "during the course of the trial," 3) "during the return of the verdict," or 4) during the sentencing hearings. The court added that there was nothing "even today that would suggest that he's incompetent." These observations were relevant to the court's determination on this issue. (*People v. Mai*, *supra*, 57 Cal.4th at p. 1033.)

The trial court also made findings on Torres's sanity based on the medical reports it had reviewed. It said, "I think the latest reports and evaluations that we received from mental health experts is that he's presently competent, he's lucid, clearly understands what he's facing, in terms of a judgment."

Torres contends his defense strategy that he proposed to counsel showed that he was not competent and he lacked the ability to understand the issues. But the trial court rejected these claims. It said, "[Torres] clearly understood the issues that were before the jury during the trial. He clearly had fashioned a defense, if believed by the jury, would result in very different verdicts." The court's consideration of Torres's right to present evidence in his defense case to support his defense theory was proper. (*People v. Stanley*, *supra*, 10 Cal.4th at pp. 806-807.) In addition, we are required to give "great deference to a trial court's decision whether to hold a competency hearing." (*People v. Marshall*, *supra*, 15 Cal.4th at p. 33.) Torres has not shown error.

### The Marsden Motions

Torres contends the trial court abused its discretion by denying his *Marsden* motions seeking to change counsel.

16

The People respond that a review of each motion shows the trial court committed no error.  We agree.

A defendant has the right to a hearing involving his or her request to change counsel.  (*People v. Marsden, supra,* 2 Cal.3d at p. 123.)  " ' "A defendant is entitled to relief if the record clearly shows that the first appointed attorney is not providing adequate representation . . . or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result . . . ." ' "  (*People v. Memro* (1995) 11 Cal.4th 786, 857.)  A defendant's dislike of counsel is " 'not enough [to show a conflict of interest].' "  (*Ibid*.)  " ' "[I]f a defendant's claimed lack of trust in, or inability to get along with, an appointed attorney were sufficient to compel appointment of substitute counsel, defendants effectively would have a veto power over any appointment and by a process of elimination could obtain appointment of their preferred attorneys, which is certainly not the law." ' "  (*Ibid*.)  "We review the court's rulings for an abuse of discretion."  (*Ibid*.)

*The January 6, 2017, Marsden Motion*

Torres filed a *Marsden* motion seeking to replace his counsel.  He claimed he had "trust issue[s]" with attorney Hanley because Hanley promised to send him discovery in October, but he did not receive it until December 28.  Torres said Hanley has been "very nice and respectful."  He claimed he had difficulty talking to Hanley and speaking with him confidentially, but he acknowledged Hanley has been "very busy."

The trial court asked Torres, "*Do you think Mr. Hanley has properly represented you so far?*"  Torres:  "*Well, Your Honor, I do. I do.*"  (Italics added.)

17

Hanley told the trial court that he had been a public defender for 21 years with "lots of experience" involving cases such as Torres's. He offered to send the redacted discovery to Torres in jail. He had at least two conversations with Torres about this, but Torres said not to send the discovery to the jail. Hanley said Torres "requested [transcripts of] interviews with the detectives," and he told Torres that "we certainly will get transcripts of those interviews."

Hanley said, "[W]e have had multiple confidential communications" in visitation, both "across the street" and "through closed circuit video monitor from the jail to the public defender's office." Torres wanted "a closed courtroom during the proceedings." Hanley explained to him that "the courts are open courts." Hanley said, however, "I made requests from the prosecutor to please do what she could to not name the charges in open court." Torres has a list of motions that he wants filed. Hanley said, "I'm very interested in whatever motions [Torres] thinks should be filed. I really want to hear from him." Torres made a request that he be transported to court in a manner that would prevent the public from seeing him. Hanley told him he would speak with the sheriff's deputies to see if that is possible.

As to his availability for receiving telephone calls from Torres, Hanley said that "jail communications are difficult." "[I]nmates aren't able to leave messages . . . . I am most of the time not in my office. I . . . will make an effort to be more available to him. I want to represent him."

The trial court denied the motion. It found Hanley was properly representing Torres and there was no "breakdown" in his relationship with counsel that would lead to ineffective representation.

18

Torres has not shown the trial court erred by denying his motion.  He admitted that Hanley was *properly representing* him. (*People v. Memro*, *supra*, 11 Cal.4th at p. 857.)  From Hanley's responses, the court could reasonably infer that counsel was responsive to Torres's requests and suggestions.

*The March 16 and March 30, 2017, Marsden Motions*

On March 16, Torres complained that there was a lack of communication between himself and counsel.  Hanley responded that "he had had *extensive communications* with Mr. Torres regarding his case."  (Italics added.)

At the March 30 *Marsden* motion hearing, Torres claimed he was "entitled to a lawyer of his choice and that he could not be forced to accept a lawyer over his objection."  He claimed his counsel was not responsive to his calls, had not shared complete discovery with him, and was not prepared for various court hearings.

Hanley responded that 1) he was prepared to address the issues at each court appearance; 2) he did not meet with Torres "as frequently as Mr. Torres would have liked," but he had met with him "on enough occasions to keep him advised of the evidence" and the issues; 3) he and his investigator met with Torres after March 21; and 4) he had discussed the contents of the video surveillance evidence.

The trial court denied these motions and found Hanley "had met and provided Mr. Torres with a complete account of the discovery."  Torres was not entitled to a "veto power over any appointment" of counsel so he could select his "preferred" attorney.  (*People v. Memro*, *supra*, 11 Cal.4th at p. 857.)

19

*The April 3, 2019, Marsden Motion*

Torres claimed: 1) Hanley's "work product is insufficient," and 2) he had not had a discussion with Hanley that lasted more than 15 minutes. Hanley responded that he had adequate contact with Torres; that he met with Torres in jail for three hours with his investigator. There was no breakdown in his relationship with Torres. He was providing the best defense for Torres.

The trial court denied the motion. It did not find Torres's claims to be credible. It said, "[Y]ou don't get to pick and choose the attorney that is appointed to represent you at government cost." "You haven't indicated to me anything that really suggest[s] that what he's doing isn't beneficial to you . . . ." The facts presented by Hanley supported the denial of this motion. (*People v. Memro*, *supra*, 11 Cal.4th at p. 857.)

*The April 10, 2019, Marsden Request*

On April 10, 2019, Torres made a reference to the prior *Marsden* hearing. He said, "I don't feel like I had a fair hearing on [the prior *Marsden* motion]." The court responded, "We're not going to have another *Marsden* motion at this time."

Torres suggests the trial court erred by not holding another hearing. But Torres did not state valid grounds for another *Marsden* hearing. His claim was that the trial judge was "not impartial" in the prior concluded hearing. The court had already denied a series of *Marsden* motions. It could reasonably decide not to grant another hearing based on a claim primarily directed at the court's impartiality, rather than on his counsel's effectiveness. (*People v. Memro*, *supra*, 11 Cal.4th at p. 857.)

20

*Torres's June 13, 2019, Motion for a New Trial*

After the jury verdicts, Torres filed an in propria persona motion for a new trial. This was largely another *Marsden* motion where he complained about the performance of his trial counsel and counsel's defense strategies.

The trial court denied the motion. It found his counsel had provided effective representation. The court said, "I don't know that any defense attorney could have done more for you, Mr. Torres, than Mr. Hanley did. He bent over backwards to both accommodate you, in terms of the issues and the defenses you wanted to present to the jury . . . , he also supplemented that with other kinds of arguments about whether you had the capacity, or whether you had the ability to form the intent that would be necessary for some of the offenses, including burglary. So there was a lot that was presented to the jury, none of it really inconsistent, all focusing on mental, your mental capacity, whether it had to do primarily with intoxication, or just your mental state. But I think you were provided much more than competent defense, an outstanding defense."

In summary, in all the *Marsden* hearings, the trial court carefully considered all of Torres's claims. It could reasonably find: 1) Torres's lawyer responded to Torres's concerns and acted in his best interest, and 2) any disagreement Torres had with counsel over defense strategy did not compromise Torres's right to receive effective representation. (*People v. Stanley*, *supra*, 10 Cal.4th at pp. 806-807.)

*The Faretta Motion*

Torres contends the trial court improperly denied his right to self-representation under *Faretta v. California*, *supra*, 422 U.S. 806 [45 L.Ed.2d 562]. We disagree.

21

"[T]he Sixth Amendment to the United States Constitution gives criminal defendants the right to represent themselves." (*People v. Johnson* (2012) 53 Cal.4th 519, 525-526.)  Here the court ruled Torres was competent to stand trial.  But "a defendant may be denied the right to self-representation if he or she, although competent to stand trial, suffers from a severe mental illness and is unable to conduct trial proceedings without assistance of counsel."  (*People v. Buenrostro* (2018) 6 Cal.5th 367, 426, fn. 25.)

In *Johnson*, the court held the defendant was competent to stand trial, but "was not competent to conduct trial proceedings by himself" as he had a "delusional thought disorder coupled with conspiracy paranoia."  (*People v. Johnson*, *supra*, 53 Cal.4th at p. 532.)  The court noted that the "[trial] judge's own observations of the defendant's in-court behavior will also provide key support for an incompetence finding" for self-representation.  (*Id*. at p. 531.)  The trial court in *Johnson* properly considered the defendant's thought deficiencies which could deprive him of a fair trial.  These included his " ' "disorganized thinking, deficits in sustaining attention and concentration, impaired expressive abilities, anxiety and other common symptoms of severe mental illness." ' "  (*Id*. at p. 532.)  The trial court's ruling on self-representation based on the court's observations of the defendant is entitled to appropriate deference.  "Such deference is especially appropriate when, as here, the same judge has observed the defendant on numerous occasions."  (*Id*. at p. 531.)  We review the trial court's ruling for an abuse of discretion.  (*Id*. at p. 532.)

Here the trial court had a substantial opportunity to observe Torres's ability to represent himself and his conduct during court proceedings.  At the initial pre-arraignment

22

proceedings on May 25, 2017, Torres was representing himself. The court warned him that he "may be better served if [he was] represented by a lawyer." On June 22, 2017, Torres requested the court to appoint a public defender to represent him. The court appointed the public defender's office. Attorney Michael Hanley was the public defender selected to represent Torres.

On August 3, 2017, Torres requested the trial court to appoint "somebody other than Mr. Hanley to represent [him]." Despite having appointed counsel, Torres told the court, "I am still pro. per." The trial judge reminded Torres that he had made a request for counsel. At the pre-arraignment hearing on August 24, 2017, Torres told the court, "I'm pro. per." The trial judge had to explain that he was "not pro. per." and was represented by counsel. On October 5, 2017, Torres requested the court to have Hanley appear only "as advisory counsel." Later at that hearing Torres told the court, "If Michael Hanley was appointed to my case, then I'll just go ahead and accept that today."

On April 3, 2019, Torres requested the trial court to allow him to represent himself under *Faretta*. The court found the request was untimely because the request should have been made 18 months earlier. It was made during jury selection, when witnesses had been travelling from out of the country to court and on the "eve of trial." A trial court may properly consider these factors in determining whether a *Faretta* motion should be denied as untimely. (*People v. Buenrostro, supra*, 6 Cal.5th at p. 426.)

On the merits the trial court said Torres did not have "the skills" necessary to represent himself.

But the trial court allowed Torres to raise the *Faretta* issue again on April 5, 2019. At that hearing the court said it had

reviewed the "competency reports" that the doctors had filed with the court. Torres had initially represented himself, but then he "decided that [he] needed the help of an attorney." The court felt Torres was "fairly simplistic in [his] analysis of the issues," that he was "somewhat halting in . . . the manner in which [he] communicate[s]." The court found Torres was not prepared: "I can see by the lack of any work product from you that is noticeable . . . ." It said, "I'm reluctant to continue the case for you to get prepared."

But the trial court took additional time to carefully evaluate the *Faretta* issue. It decided to watch Torres and his demeanor during the proceedings. The court told Torres that he was competent to stand trial, but that "is a slightly different issue than [his] competence to represent [him]self." In watching Torres during jury selection, the court noted that he appeared "catatonic." He was not observing the demeanor of the prospective jurors. He was not "fully focused" on the proceedings. He was only "shuffling" a few pieces of paper.

During one prior court hearing, Torres's counsel advised the court that Torres had been "diagnosed with schizophrenia paranoid type" and had been prescribed "antipsychotic medications."

On April 8, 2019, the trial court issued its decision denying the *Faretta* motion. It highlighted Torres's serious mental health issues. It noted that on July 6, 2017, the jail sent a notice that Torres could not be transported "because of mental health issues," that he might be a "danger to himself or others," and that his medical condition required observation and treatment. On August 3, Torres was "raising a variety of mental health issues." He had requested a psychologist "because of emotional and

psychological damages." The court noted that doctors had indicated that Torres has "mental health" issues that "intermittently appear." It said Torres continues to have "paranoia regarding the role of the court and his attorney." He also "demonstrates paranoia about the various people involved in the system." It said Torres is "a little bit irrational in his evaluation of the evidence." He is "pretty consistently in denial regarding . . . the defenses" his attorney claims are supported by the record. The court found he is "competent to stand trial." But it also said, "I'm also completely convinced that based on my observations and review of the record, his rather lengthy mental health record that he's not competent to represent himself." For Torres to represent himself "would be a travesty and would result in a manifest injustice."

The trial court had also previously found that on more than one occasion Torres had engaged in *deliberate* tactics that were intended to "create some chaos and muck up the trial process." The use of such tactics to interrupt trial is a relevant factor in determining whether a defendant is capable of representing himself. (*People v. Carson* (2005) 35 Cal.4th 1, 10; *People v. Smyers* (1968) 261 Cal.App.2d 690, 701 [self-representation is not a vehicle "to disrupt unreasonably the orderly processes of justice"].) Torres has not shown that the trial court erred.

Moreover, Torres has not supported his claim that there was a reasonable probability of a different result if he had been permitted to represent himself at trial. Torres testified at trial and he was allowed to present his defense theory as part of the defense case. But the jury rejected the defense evidence. Dr. Mills's testimony in rebuttal refuted Torres's claim about his mental state at the time of the offenses. The People's case was

strong.  The evidence of the two child victims was uncontradicted.
It was also supported by highly incriminating DNA evidence
taken from swabs from the children's vaginal and anal areas.

*Sentencing*

Torres and the People agree that the trial court in
sentencing erred by imposing an unauthorized fine under section
290.3.  They contend the court imposed the fine of $1,230.  But
they note that the statutory provision sets forth the *specific fines*
that are authorized under that provision, and the fine the court
imposed is not one of them.

The statute provides, "Every person who is convicted of any
offense specified in subdivision (c) of Section 290 shall, in
addition to any imprisonment or fine, or both, imposed for
commission of the underlying offense, be punished by a fine of
three hundred dollars ($300) upon the first conviction or a fine of
five hundred dollars ($500) upon the second and each subsequent
conviction, unless the court determines that the defendant does
not have the ability to pay the fine." (§ 290.3, subd. (a).)  The
trial court's imposition of an unauthorized fine, which also did
not include adequate required findings, constitutes reversible
error.  (*People v. High* (2004) 119 Cal.App.4th 1192, 1200-1201.)
The court may correct that error on remand for resentencing and
issue an amended abstract of judgment.

But we also have a sua sponte duty to correct other legal
errors the trial court made during sentencing.  (*People v. Smith*
(2001) 24 Cal.4th 849, 852; *In re Ricky H.* (1981) 30 Cal.3d 176,
191; *In re Sandel* (1966) 64 Cal.2d 412, 418.)  The court imposed
the aggregate sentence of life without the possibility of parole
plus 50 years to life, accompanied by the following findings, "So
anybody in these proceedings would undoubtedly *come to the*

*conclusion* that *the sentence imposed is so long and so harsh* that it presents–that it's somewhat *absurd.*" (Italics added.) The court stated, "[T]hese are sentences that are mandated by the Legislature . . . ." It ruled it could not reduce the sentence "unless this case is reversed on appeal." During sentencing, the court did not appear to challenge or disagree with defense counsel's claims that the sentence was too harsh. Counsel mentioned Torres's mental health problems. The court had previously highlighted the nature of those problems; and during a March 29, 2019, hearing, the court asked the prosecutor to consider a much shorter determinate sentence of 20 years for Torres.

To the extent the trial court found it was bound by state statutes to impose a sentence that *it found* to be *too long*, *too harsh and absurd*, it was wrong. The trial court also had the authority to consider the constitutional limitations of a sentence, including whether the sentence violates the state and federal constitutional bans on cruel or unusual punishment as applied to a particular defendant. (*In re Lynch* (1972) 8 Cal.3d 410, 418 [where the application of state statutory law imposes a harsh and unreasonable sentence for a defendant, "that same sentence must also be measured against the constitutional test of cruel or unusual punishment"].) Torres's sentence is not constitutionally disproportionate for Eighth Amendment purposes. (*People v. Reyes* (2016) 246 Cal.App.4th 62, 82-86.)

But "[t]he punishment provided by law may . . . run afoul of the constitutional prohibition against cruel or unusual punishment in article 1, Section 17, of the California Constitution." (*People v. Mora* (1995) 39 Cal.App.4th 607, 615.) The trial court may consider facts about the offender in making

27

its determination on this constitutional issue, including the defendant's age, prior criminality, personal characteristics, and his or her state of mind, mental health condition, etc. (*People v. Dillon* (1983) 34 Cal.3d 441, 479.) Successful challenges are rare, but they are not precluded given the varying individual factors that may be involved in each case. (*People v. Reyes*, *supra*, 246 Cal.App.4th at pp. 86-87.) The trial court in the first instance has the authority to rule on this issue. (*People v. Leigh* (1985) 168 Cal.App.3d 217, 223-224.) A reversal is appropriate where the trial court does not know its sentencing discretion. (*In re Large* (2007) 41 Cal.4th 538, 550.)

Consequently, where the trial court sees a cruel or unusual punishment issue, but incorrectly concludes only the appellate court may decide it, a remand for resentencing is appropriate. (*People v. Leigh*, *supra*, 168 Cal.App.3d at p. 223.) Torres's counsel raised a *Dillon* cruel and unusual punishment challenge based on Torres's mental health condition. "Where a challenge based on *Dillon* is raised in the trial court, *it is an issue to be decided by the trial judge*." (*People v. Williams* (1986) 180 Cal.App.3d 922, 926, italics added.) On remand for resentencing, the trial court will have another opportunity to consider this issue.

The trial court indicated that it believed the Legislature was trying to send a message in terms of sentencing. But the role of the trial court is not to send a message; instead, its role is to achieve a just sentence for the defendant consistent with the constitution. The trial court has a *duty to never impose* a sentence it reasonably believes to be "absurd" as applied to the particular defendant in the case before it. (*People v. Baker* (2018) 20 Cal.App.5th 711, 719 ["Where a trial court concludes that a

28

mandatory minimum sentence is grossly disproportionate," it has "*the constitutional duty–not to impose* [it]" (italics added)].)

DISPOSITION

The case is remanded for resentencing.  The hearing will be limited to sentencing only.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED.

GILBERT, P. J.

We concur:

YEGAN, J.

TANGEMAN, J.

Brian E. Hill, Judge

Superior Court County of Santa Barbara

_____

Jennifer A. Mannix, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Jaime L. Fuster and Joseph P. Lee, Deputy Attorneys General, for Plaintiff and Respondent.